EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Elizabeth Bryan Picó<br>Rosa Vargas Hernández | 2000 TSPR 1 |

Número del Caso: TS-9797 y TS-8437

Fecha: 03/01/2000

De la Oficina del Procurador General: Lcda. Ivonne Casanova Pelosi

Abogado de la Parte Querellada: Por Derecho Propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

En el Tribunal supremo de puerto rico

In re:

Elizabeth Bryan Picó y         TS-9797
Rosa Vargas Hernández        TS-8437

PER CURIAM

En San Juan, Puerto Rico, a 3 de enero del 2000

El drama disciplinario que hoy nos ocupa entraña una situación cuyos personajes principales son dos abogadas: una, actuando en calidad de notaria, y la otra, como compareciente ante la primera. Evaluamos los hechos a la luz de la investigación y los informes correspondientes del Procurador General de Puerto Rico y de las comparecencias de las referidas abogadas.

I

Con fecha de 9 de diciembre de 1997, la Lcda. Vargas Hernández presentó a la Oficina de Inspección de Notaría un índice enmendado correspondiente al

mes de octubre de 1997. Alegó, en dicha ocasión, que el jueves 30 de octubre de 1997 había autorizado las escrituras número 14(a) y 15 sobre Protocolización de Poderes y que, por una inadvertencia, las mismas no habían sido incluidas en el índice notarial correspondiente al mes de octubre de 1997. Explicó, además, la Lcda. Vargas Hernández en su comparecencia ante la mencionada Oficina que, luego de que otorgara las mencionadas escrituras, uno de sus otorgantes --la Lcda. Bryan Picó-- acudió a su oficina y sustrajo los poderes que habían sido protocolizados. Finalmente, informó que el lunes siguiente al otorgamiento de las escrituras, y sin tener conocimiento de la sustracción de los poderes, ella había presentado las correspondientes notificaciones al Registro de Poderes y Testamentos.

Enterado de lo anteriormente expresado, la Oficina de Inspección de Notaría requirió de la Lcda. Bryan Picó una explicación. Esta, inicialmente, indicó que había contratado a la Lcda. Vargas Hernández para que protocolizara dos poderes enviados por sus hermanas desde fuera de Puerto Rico. Especificó que en varias ocasiones había visitado a la Notaria Vargas Hernández en vista de que entendía que el trámite se estaba postergando demasiado. En torno a la alegada sustracción de los poderes, sostuvo que, ante la inacción de la Lcda. Vargas Hernández, acudió a la oficina de ésta y pidió a su secretaria que le entregase los poderes de sus hermanas para contratar a otro abogado. Según alegó la Lcda. Bryan Picó, en su primera comparecencia ante la

mencionada Oficina, la secretaria de la Lcda. Vargas Hernández le entregó los poderes. Resulta imperioso señalar que, en esta ocasión, la Lcda. Bryan Picó afirmó que ni ella ni su hermano llegaron a firmar documento alguno.[1]

Ante la postura asumida por la Lcda. Bryan Picó, la Lcda. Vargas Hernández reiteró, ante la Oficina de Inspección de Notaría, que los poderes fueron protocolizados, esto es, que las partes efectivamente habían firmado los mismos. Expresó, además, la Lcda. Vargas Hernández que su entonces secretaria, la Sra. Ninutchka Cintrón era testigo de ello.

Referido el asunto al Procurador General de Puerto Rico, éste solicitó de la Lcda. Vargas Hernández los originales de las escrituras en controversia. Ésta así lo hizo. Simultáneamente, la Lcda. Bryan Picó solicitó, el 16 de junio de 1999, que se desestimara la querella en su contra porque entendía que no existía suficiente prueba para sostener el cargo imputado y porque, en los hechos imputados, actuaba como cliente y no como abogada.

El Procurador General citó a la Lcda. Bryan Picó a sus oficinas. En esta ocasión, confrontada con las escrituras originales de protocolización de poderes, la Lcda. Bryan

---

[1] Carta de 10 de diciembre de 1998, de la Lcda. Bryan Picó a la Directora de la Oficina de Inspección de Notaría.

Este asunto fue reiterado por la Lcda. Bryan Picó, en carta de 28 de abril de 1999, indicando que "[e]n cuanto a la interrogante de si yo llegué a otorgar la escritura de protocolización ante la notario de referencia mi respuesta es no, porque nunca estuvo el documento listo."

Picó admitió que era su firma la que estaba estampada en los mismos. Según el informe complementario de la Oficina del Procurador General, la Lcda. Bryan Picó le resultaba un tanto difícil recordar los eventos que dieron base al otorgamiento. Sin embargo, admitió la mencionada abogada que la protocolización se efectuó ante la notario Vargas Hernández pero que su hermano había firmado uno o dos días antes. Finalmente, intentó justificar su acción indicando que solicitó a la secretaria de la Lcda. Vargas Hernández que le entregara los poderes pues entendía que, como no había copia certificada de la escritura, la misma no estaba autorizada.

Denegamos la solicitud de desestimación radicada por la Lcda. Bryan Picó; concedimos, además, un término de veinte (20) días a ambas querelladas para que mostraran causa por la cual no debían ser sancionadas con una enérgica censura por sus actuaciones en estos eventos.[2] En cumplimiento con la antes mencionada orden, tanto la Lcda. Bryan Picó como la Lcda. Vargas Hernández han comparecido, por separado, ante este Tribunal.

La Lcda. Bryan Picó señala, en su comparecencia, que las contradicciones en sus declaraciones obedecen al paso del tiempo y que, dada la naturaleza desagradable de los

---

[2] **Resolución de 24 de septiembre de 1999. Sala Especial de Verano integrada por el Juez Presidente señor Andréu García y los Jueces Asociados señores Negrón García y Corrada del Río.**

hechos, intentó olvidar los mismos. Añade que la única contradicción, en que a su juicio ella incurrió, fue el asunto de la firma o falta de ella en las escrituras. Indica, además, que nunca pensó que su contestación inicial constituyera un aspecto importante de la investigación que hoy nos ocupa. Finalmente, luego de expresar que su contestación original era su mejor recuerdo, la Lcda. Bryan Picó, con énfasis, arguye que "esta abogada no se encontraba en el ejercicio de su profesión de notario durante estos eventos. Nuestra única participación en estos hechos fue como cliente y por consiguiente nunca hemos tenido la necesidad de ocultar algo".

Por su parte, la Lcda. Vargas Hernández señala, en su escrito, que preparó las escrituras acorde con la Ley Notarial. Es decir, ambos otorgantes estaban presentes ante la notario y las dos actas de Protocolización de Poder fueron firmadas ante ella. Señala, además, que estuvo sumamente preocupada pues en su protocolo, faltaban los dos poderes originales que precedían a la protocolización. Por ello fue que acudió a la Oficina de Inspección de Notaría. En cuanto a la sustracción de los poderes originales, aduce que sólo autorizó a su secretaria a que le entregara a los otorgantes copias certificadas de cortesía. Finalmente, alude a sus catorce años de práctica privada de la profesión y que no existía interés de perjudicar, mentir o faltar a sus obligaciones.

Estando en condiciones de resolver el asunto ante nuestra consideración, procedemos a así hacerlo.

II

A - Lcda. Elizabeth Bryan Picó

Coincidimos con la Lcda. Bryan Picó en que la experiencia humana nos dice que, de ordinario, el transcurso del tiempo tiene un efecto nocivo en la memoria. De ello, incluso, podríamos tomar conocimiento judicial. Al examinar sus posturas en este asunto, nos percatamos de que es en esta etapa de los procedimientos cuando la Lcda. Bryan Picó alude, por primera vez, a la inexactitud de su memoria. La posición a esos efectos asumida por ella parece un burdo intento de tratar de justificar una actuación insostenible. Más aún, la Lcda. Bryan Picó pretende soslayar el asunto indicando que su única inconsistencia fue el aspecto de la firma. Nótese que, precisamente, la firma o falta de ella en las escrituras de protocolización es algo fundamental en la controversia hoy ante nuestra consideración. Si desde la génesis del incidente hubiese estado insegura de su memoria, la Lcda. Bryan Picó debió haberlo expresado entonces en lugar de declarar tajantemente que no había firmado las escrituras.

Además de la acomodaticia falta de memoria, el argumento principal que esboza la Lcda. Bryan Picó, en su vano intento de tratar de justificar su reprobable conducta en este asunto, es que ella no actuó como abogada en los

hechos que originan la queja contra ella; esto es, sostiene la referida abogada que ella era una mera cliente de la Lcda. Vargas Hernández. Dicho de otra manera, entiende la Lcda. Bryan Picó que un abogado puede desprenderse de las obligaciones dimanantes de los Cánones de Etica Profesional cuando éste no está propiamente desempeñando su función de abogado.

Dicha postura ha sido rechazada por este Tribunal en reiteradas ocasiones. In re: Secretario de Justicia, 118 D.P.R. 827, 859 (1987); In re: López de Victoria, Opinión Per Curiam y Sentencia del 6 de abril de 1994; In re: Fred Martínez y Lawrence Odell, Opinión Per Curiam y Sentencia del 25 de junio de 1999. Nuevamente debemos señalar, y enfatizar, que una vez un abogado es admitido al seno de la profesión, éste no puede desprenderse de sus obligaciones éticas simplemente señalando que actuaba como cliente y no como abogado en una situación como la presente. No existe tal dicotomía entre la vida cotidiana del ciudadano que es abogado y el ejercicio de su profesión. Los Cánones de Etica Profesional se aplican tanto a la vida privada como profesional de un abogado. Dicho de otra manera, las responsabilidades éticas de los miembros de la profesión de abogado no tienen un horario de trabajo.

A la luz de lo anterior, forzoso resulta concluir que la conducta de la Lcda. Bryan Picó infringió los Cánones 35[3]

---

[3] **Entre los mandatos impuestos por el Canon 35, 4 L.P.R.A. Ap. IX, C. 35, está el que:**

y 38[4] de Ética Profesional. Por ello, la <u>censuramos</u> <u>enérgicamente</u>. Huelga decir que apercibimos a la Lcda. Bryan Picó de que, en el futuro, observe fielmente los principios y postulados esbozados en los Cánones de Ética Profesional so pena de la imposición de severas sanciones disciplinarias.

B – <u>Lcda. Rosa Vargas Hernández</u>.

En torno a la conducta de la Lcda. Vargas Hernández, el Procurador General, en su Informe Complementario, expresa

---

> "[l]a conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. [...]".

[4] El Canon 38, en lo pertinente, establece que:

> "El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. [...]
>
> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el

que: "[l]o único que a ciencia cierta podemos concluir de la gestión notarial de la licenciada Vargas es que dicha notario ha sido descuidada y errática en el trámite de sus índices notariales y en el trámite de la notificación de las escrituras en controversia."[5]

En In re: Cruz Ramos, 127 D.P.R. 1005 (1991), expresamos que:

> "[e]l notario puertorriqueño es un profesional del Derecho que ejerce a su vez una función pública. En el ejercicio de su responsabilidad profesional, el notario disfruta de plena autonomía e independencia. Sin embargo, el ejercicio de este puntilloso ministerio trasciende la esfera privada y en el crisol de la práctica se impregna de carácter público." Id., pág. 1007.

Justamente, por la esencia pública de su función, los notarios son llamados a ser sumamente cautelosos en el ejercicio de su práctica, consciente a toda hora de las consecuencias funestas que podría tener su negligencia sobre los negocios jurídicos en que se involucran. In re: Rodríguez Báez, 129 D.P.R. 819 (1992).

Sabido es que los notarios están obligados a cumplir estrictamente con lo dispuesto en la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2001 et. seq. y en los Cánones del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. La inobservancia de tal obligación los expone a la acción disciplinaria correspondiente. In re: Rodríguez Báez, ante.

---

**desempeño de su profesión, debe conducirse en forma digna y honorable. [...]"**

No hay duda que la Lcda. Vargas Hernández no fue lo cuidadosa y diligente que debe ser un notario en relación con la importantísima responsabilidad que le impone la Ley Notarial de Puerto rico a todo notario en lo referente a la radicación, y fidelidad, de los índices notariales.

Por otro lado, y en relación a los hechos hoy ante nuestra consideración, somos conscientes del hecho de que fue la secretaria de la Lcda. Vargas Hernández, y no ella, quien hizo entrega de los poderes a la Lcda. Bryan Picó.

Ello no obstante, debe mantenerse presente que el protocolo de un notario es algo sumamente importante; en el mismo queda plasmado la función que ejerce el notario. Este debe ejercer la más estricta y celosa supervisión sobre sus protocolos.[6] Obviamente, en los albores del Siglo XXI, las justificaciones cimentadas en la conducta de sus secretarias no constituyen eximente de responsabilidad profesional. A esos efectos, basta con reiterar que la responsabilidad por la práctica de la notaría es una intransferible. Cf. In re: Nogueras Cartagena, 127 D.P.R. 574 (1990).

A la luz de los hechos particulares del caso, sin embargo, somos del criterio que lo procedente, desde un punto de vista disciplinario, en cuanto a la Lcda. Vargas Hernández y por su falta de circunspección en el manejo de

---

[5] **Página 5 del Informe Complementario.**
[6] **La Regla 40 del Reglamento Notarial establece que, al protocolizar el documento (en este caso los poderes otorgados en Estados Unidos) es indispensable unirlo al acta. Además, véase los Artículos 30, 31 y 38 de la Ley Notarial, 4 L.P.R.A. secs. 2048, 2049 y 2056.**

su obra notarial, lo es una <u>simple amonestación</u>; apercibiéndola de que, en el futuro, cumpla fielmente con los Cánones de Ética Profesional y con los mandatos de la Ley Notarial de Puerto Rico.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:


Elizabeth Bryan Picó y                 TS-9797
Rosa Vargas Hernández                   TS-8437


SENTENCIA


En San Juan, Puerto Rico, a 3 de enero del 2000


Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia: 1) censurando enérgicamente y apercibiendo a la Lcda. Elizabeth Bryan Picó de que, en el futuro, observe fielmente los principios y postulados esbozados en los Cánones de Ética Profesional so pena de la imposición de severas sanciones disciplinarias; y 2) amonestando a la Lcda. Rosa Vargas Hernández, apercibiéndola de que, en el futuro, cumpla fielmente con los Cánones de Ética Profesional y con los mandatos de la Ley Notarial de Puerto Rico.

Así lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado. El Juez Asociado señor Hernández Denton no intervino.


Carmen E. Cruz Rivera
Subsecretaria del Tribunal Supremo