EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| Isis N. Ramírez Salcedo | 2016 TSPR 174 |
| | 196 DPR ____ |

Número del Caso: CP-2015-4

Fecha: 2 de agosto de 2016

Abogado de la querellada:

      Lcdo. Ramón A. Pérez González

Oficina de la Procuradora General:

      Lcda. Margarita Mercado Echegaray
      Procuradora General

      Lcda. Yaizamarie Lugo Fontanez
      Procuradora General Auxiliar

Comisionado Especial:

      Lcdo. Carlos S. Dávila Vélez

Materia: Conducta Profesional – Censura enérgica por desplegar conducta contraria a los Cánones 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, Cs. 35 y 38 (2012)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Isis N. Ramírez Salcedo        Núm. <u>CP-2015-004</u>        Conducta
                                                              Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 2 de agosto de 2016.

Todo abogado tiene el compromiso ético inquebrantable de conducirse, tanto en el desempeño de su ministerio profesional como en su vida privada, en forma digna, honorable, íntegra y honrada. En este caso, reprobamos las actuaciones de una letrada que, durante el trámite de una acción civil en la cual fungía como parte demandada, se apartó de lo dispuesto en los Cánones 35 y 38 del Código de Ética Profesional. 4 LPRA Ap. IX, Cs. 35 y 38 (2012) (Cánones 35 y 38). Si bien todo abogado tiene el derecho a defenderse de las alegaciones que se planteen en un proceso civil en su contra, ello no le autoriza a transgredir los

preceptos éticos que regulan la práctica del Derecho en Puerto Rico.  Veamos los hechos que sustentan nuestra determinación.

I

A. **Trámite Disciplinario**

El **14 de julio de 2011** el Sr. Luis E. Millán Velázquez (señor Millán), presidente ejecutivo interino de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (conocida como COSSEC), dirigió una carta al entonces Secretario de Justicia, el Lcdo. Guillermo Somoza Colombani (Secretario de Justicia), solicitando una investigación por alegada conducta ilegal de la Lcda. Isis N. Ramírez Salcedo (licenciada Ramírez Salcedo o querellada).[1]  En su comunicación, el señor Millán adujo que, estando pendiente un proceso judicial en cobro de dinero y ejecución de hipoteca contra la aquí querellada, ésta logró, por medio de treta y engaño, la cancelación por prescripción de un gravamen hipotecario que garantizaba la controvertida deuda en el Registro de la Propiedad.  Esa cancelación, según añadiera, le permitió a la abogada gravar el inmueble con dos hipotecas revertidas, la primera a favor del Secretario de Vivienda y Desarrollo Urbano de los Estados Unidos (Secretario de Vivienda Federal), por $370,000 y la segunda a favor de *Money House*, Inc. (*Money House*), por $247,000.  Expresó que, en vista de lo anterior, la entidad

---

[1]  La Lcda. Isis N. Ramírez Salcedo (licenciada Ramírez Salcedo o querellada) fue admitida a la abogacía el **15 de mayo de 1981** y prestó juramento como notaria el **5 de junio de 1981**.

tenía motivos fundados para creer que la licenciada Ramírez Salcedo había incurrido en conducta delictiva, por lo que de conformidad con el Art. 9.08 de la Ley Núm. 255-2002, Ley de Sociedades y Cooperativas de Ahorro y Crédito, 7 LPRA sec. 1369g (2013), refirió el asunto a su atención y solicitó que se investigara.

Acto seguido, el **20 de julio de 2011** el Secretario de Justicia remitió la misiva del señor Millán a la Oficina de la Procuradora General (Procuradora), para que investigara si, en efecto, la querellada había cometido alguna infracción al Código de Ética Profesional, 4 LPRA Ap. IX (2012).**[2]** No fue hasta el **16 de enero de 2014** que la Procuradora sometió su Informe.

En su escrito, la funcionaria advirtió que no se evaluaron los méritos de las controversias que estuvieron ante la consideración del Tribunal de Primera Instancia. Recalcó, además, que no se examinó la responsabilidad civil de la abogada para con la parte demandante, por entender que la responsabilidad personal y económica de la licenciada Ramírez Salcedo eran materias ajenas al proceso disciplinario. Tampoco se atendió la responsabilidad

---

**[2]**    La comunicación en cuestión sirvió para dar inicio al proceso disciplinario contra la querellada. El **17 de agosto de 2011** el Sr. José E. Pérez Ayala, Oficial Legal adscrito a la Oficina de la Procuradora General (Procuradora), le dirigió una carta a la licenciada Ramírez Salcedo en la que le informó sobre la Queja presentada, así como de las alegaciones en las que se sustentaba. Así pues, le concedió un término de diez (10) días para que expresara su posición.

Es meritorio señalar que, en su contestación, la querellada no ofreció su versión acerca de lo planteado en la misiva suscrita por el Sr. Luis E. Millán Velázquez, presidente ejecutivo interino de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (conocida como COSSEC). Más bien, se limitó a referirse a cierta documentación incluida junto a su comunicación y a afirmar que haría pagos parciales a la deuda, tan pronto recibiera un dinero producto de unos casos pendientes de adjudicación.

criminal de la querellada, ya que, según indicó, este fue un asunto referido a la atención de la Fiscalía. Explicó que su gestión se circunscribió, más bien, **a examinar la conducta de la abogada durante su participación como parte demandada en los casos civiles que enfrentó.** De la investigación efectuada, la Procuradora **concluyó que la licenciada Ramírez Salcedo había infringido los Cánones 35 y 38 del Código de Ética Profesional.**[3]

En cumplimiento con nuestra Resolución de **9 de febrero de 2015,** el **13 de abril** siguiente la Procuradora presentó una Querella, mediante la cual le formuló dos cargos disciplinarios a la letrada por supuestamente haber quebrantado los deberes impuestos en los Cánones 35 y 38 de Ética Profesional.[4] Oportunamente, en su Contestación a la Querella la abogada rechazó las imputaciones éticas y solicitó su desestimación. Sostuvo, en esencia, que COSSEC estaba utilizando el procedimiento disciplinario como mecanismo de presión.

Vista la Querella, así como su Contestación, el **9 de julio de 2015** nombramos al Hon. Carlos S. Dávila Vélez,

---

[3] En reacción al Informe de referencia, la querellada presentó un escrito el **11 de febrero de 2014,** mediante el cual finalmente ofreció su versión de los hechos y negó haber incurrido en conducta antiética alguna.

[4] Específicamente, la Procuradora imputó lo siguiente:

La [l]icenciada Ramírez Salcedo infringió los preceptos de sinceridad y honradez del Canon 35 de Ética Profesional y no exaltó el honor y la dignidad de la profesión, aunque ello conllevase sacrificios personales, no evitó la apariencia de conducta impropia ni hizo su propia y cabal aportación a la administración de la justicia conforme a los preceptos del Canon 38 de Ética Profesional, al no actuar de forma digna, honorable, sincera, honrada ni ajustarse a la verdad de los hechos en el trámite judicial [KCD1997]-0125, en el cual ella era parte demandada. Querella, pág. 10.

exjuez del Tribunal de Primera Instancia, como Comisionado Especial (Comisionado Especial). Después de ciertos incidentes procesales, el pasado **16 de noviembre de 2015** se celebró una Conferencia con Antelación a la Vista en la cual se discutió el Informe Preliminar entre Abogados presentado por las partes. En esa vista, se sometió el asunto disciplinario a base del expediente.[5]

A continuación reseñamos las determinaciones de hecho consignadas en el Informe del Comisionado Especial.[6]

**B. Trasfondo Fáctico**

**1. Caso Civil Núm. KCD-1997-0125: <u>Cooperativa de Ahorro y Crédito de la Policía de Puerto Rico v. Barto Bover Irizarry</u>,** *et al.*

El **24 de marzo de 1997** la Cooperativa de Ahorro y Crédito de la Policía (Poli-Coop) demandó en cobro de dinero y ejecución de hipoteca al Sr. Barto Bover Irizarry, a su entonces esposa, la licenciada Ramírez Salcedo, así como a la Sociedad Legal de Bienes Gananciales compuesta por ambos. Poli-Coop solicitó al Tribunal de Primera Instancia el pago de $87,604.71 de principal, intereses al 11.166% anual a partir del 6 de enero de 1994 y una suma de costas y honorarios de abogado según fuera estipulado en el pagaré

---

[5] A solicitud de la Procuradora se unió el expediente del AB-2014-0010 al asunto CP-2015-0004 y se tomó conocimiento judicial de los casos <u>Cooperativa de Ahorro y Crédito de la Policía de Puerto Rico v. Barto Bover Irizarry</u>, *et al.*, Civil Núm. KCD-1997-0125, y <u>Cooperativa de Ahorro y Crédito de la Policía de Puerto Rico y otros v. Isis Nydia Ramírez Salcedo y otros</u>, Civil Núm. KAC-2011-0736.

[6] El Comisionado Especial adoptó en su escrito los hechos estipulados por la Procuradora y la querellada en el Informe Preliminar entre Abogados. En su Informe el funcionario coligió que, en el ámbito privado, la licenciada Ramírez Salcedo había incurrido en conducta contraria a las Cánones 35 y 38 de Ética Profesional, 4 LPRA Ap. IX, Cs. 35 y 38 (2012) (Cánones 35 y 38).

hipotecario.  Suplicó además que, una vez adviniera final y firme la sentencia, expidiera los mandamientos correspondientes para la venta en pública subasta del inmueble que garantizaba la obligación, y de ser insuficiente para satisfacer el monto adeudado, expidiera un mandamiento de ejecución contra el resto de los bienes de la parte demandada.  La querellada fue emplazada personalmente el 21 de julio de 1997, en representación de la Sociedad Legal de Bienes Gananciales constituida por ella y su excónyuge.

Tras los trámites de rigor, el **10 de febrero de 1999** el foro juzgador dictó una Sentencia en Rebeldía, en la que le ordenó a la parte demandada pagar $81,105.17 de principal y cargos por mora, intereses sobre dicha suma, las costas, más $8,110.51 de honorarios de abogado.[7]  La Sentencia en Rebeldía, la cual le fue notificada a la licenciada Ramírez Salcedo a 1023 Altos Ponce de León, Río Piedras, Puerto Rico 00926, fue devuelta posteriormente por el Servicio Postal de los Estados Unidos (USPS).[8]

En lo pertinente, el **25 de marzo de 1999** la querellada compareció por derecho propio al Tribunal de Primera

---

[7]  Cabe mencionar que el **21 de enero de 1999**, la parte demandante compareció para solicitar que se anotara la rebeldía de la parte demandada, ya que, según alegó, las conversaciones transaccionales no habían rendido frutos.  En el expediente consta una carta de **15 de enero de 1998**, mediante la cual la querellada le propuso una oferta de pago a la entidad predecesora de COSSEC, con el fin de cumplir con el importe de la deuda.  En respuesta a esa comunicación, el **23 de enero de 1998** la representante legal de la antigua entidad le remitió copia de esa carta a una de sus oficiales, para que le informara si aceptaba o no la oferta de pago allí consignada.  A su vez, un duplicado de esa última misiva, identificada con el número del caso, fue dirigida a la licenciada Ramírez Salcedo.  Por lo cual, podemos inferir que la abogada de epígrafe tenía conocimiento del pleito, contrario a lo alegado posteriormente.

[8]  Esa era una de las direcciones que constaba en la solicitud del préstamo hipotecario otorgado a los excónyuges por la institución cooperativa.

Instancia para solicitar la paralización de todo trámite judicial del caso en su contra, puesto que se había acogido a los beneficios de la Ley Federal de Quiebra.[9] Debajo de su firma hizo constar la siguiente dirección: MSC 283, Suite 112, 100 Gran Boulevar[d] Paseos, San Juan, PR 00926. Atendido su escrito, el **17 de mayo de ese mismo año** el foro de instancia paralizó los procedimientos post-sentencia atinentes al caso, no sin antes instruir a las partes a que le informaran las determinaciones del Tribunal de Quiebra de los Estados Unidos. Ese dictamen le fue notificado a la abogada a la dirección consignada en su moción.[10]

Transcurrido más de ocho años desde la paralización del caso, el **20 de noviembre de 2007** Poli-Coop, representada por COSSEC, su síndico liquidador, presentó una *Moción Solicitando Enmendar la Sentencia en Rebeldía*. En esencia planteó que, al tratarse de un caso de cobro de dinero y ejecución de hipoteca, era necesario enmendar la Sentencia en Rebeldía para incorporarle las disposiciones concernientes a

---

**9**    El Caso Núm. 99-02240(ESL), fue presentado el **2 de marzo de 1999** ante la Corte Federal de Quiebra y fue desestimado a solicitud de la querellada en julio de ese mismo año. Poco tiempo después, presentó una segunda petición que fue desestimada en el 2001 (Caso Núm. 99-15722(ESL)). Del expediente no surgen las razones específicas que justificaron dicha desestimación.

**10**    Surge de los autos del caso disciplinario que el **19 de abril de 2000** la querellada y Poli-Coop suscribieron un *Acuerdo de Restructuración de Pago*, a través del cual la licenciada Ramírez Salcedo reconoció la deuda. Este convenio, solicitado por la abogada, se hizo a fin de facilitar su cumplimiento con el plan de pago propuesto a la Corte Federal de Quiebra. No obstante, en la primera cláusula del acuerdo suscrito aparece un número de caso en cobro de dinero distinto al que nos concierne ([KCD19]96-0482). Este número corresponde a otro pleito entre las partes desistido previamente. Podemos deducir que este fue un error generado por una confusión con los números de los casos desistidos anteriormente y que involucraban a las mismas partes. Poli-Coop indicó que el caso Civil Núm. KCD-1997-0125 representaba su tercer esfuerzo para cobrar judicialmente su acreencia. Anteriormente, la entidad había presentado los casos civiles Núm. KCD1991-2290 y Núm. KCD1996-0482, ambos desestimados sin perjuicio ante la promesa de pago de la parte demandada.

la ejecución de hipoteca y venta en pública subasta del inmueble que garantizaba la deuda objeto del pleito. Poli-Coop certificó haberle enviado copia del escrito presentado a la querellada a MSC 283, Suite 112, 100 Gran Boulevar[d] Paseos, San Juan, PR 00926.[11]

Atendida la moción, el **21 de febrero de 2008** el tribunal de instancia se negó a enmendar su dictamen y ordenó a Poli-Coop, entre otras cosas, acreditar el estado de la petición de quiebra ante el foro federal e informar si la deuda había sido descargada. La notificación de la Orden cursada a la querellada fue devuelta el **31 de marzo de 2008** por el USPS ("*Attempted, Not Known*").[12]

Finalmente, el **28 de mayo de 2008** la entidad cooperativa indicó que la última petición de quiebra interpuesta por la querellada había sido archivada el **25 de mayo de 2001**.[13] Por consiguiente, rogó al tribunal de instancia que continuaran los trámites de ejecución de sentencia. El representante

---

[11] Esta es la misma dirección que la licenciada Ramírez Salcedo consignó en su única comparecencia ante el Tribunal de Primera Instancia y a la cual se le remitió la Orden de paralización del pleito en el año 1999.

[12] Ese documento también le fue notificado a MCS 283, Suite 112, 100 Grand Boulevar[d] Paseos, San Juan, PR 00926.

[13] Poli-Coop acompañó el aludido escrito, entre otros, con una Certificación Registral de **31 de marzo de 2008**, de la cual se desprendía el gravamen disputado. Asimismo, presentó copia de una Sentencia de divorcio de 13 de marzo de 1998, a través de la cual se le adjudicó la titularidad del inmueble objeto de la controversia a la querellada.

En el ínterin, el **1 de abril de 2008** Poli-Coop presentó una *Moción bajo la Regla 51.1 de las de Procedimiento Civil*. Mediante Orden emitida el **25 de abril de 2008** el Tribunal de Primera Instancia atendió el escrito e indicó lo siguiente: "Esta moción no cumple con lo requerido en la Orden de 21 de febrero de 2008. La señora secretaria de este Tribunal debe evaluar si del registro de direcciones de este Tribunal surge una dirección correcta de la Lcda. Ramírez [Salcedo]. Entonces proveeremos". *Orden, Anejo 2 del Informe Preliminar entre Abogados.* Este documento le fue remitido a la licenciada Ramírez Salcedo a la misma dirección a la que se le había enviado el último documento judicial devuelto.

legal de la parte demandante certificó haberle remitido este documento a la abogada a la dirección antes indicada. Así las cosas, el **13 de junio de 2008** el foro juzgador concedió a la licenciada Ramírez Salcedo diez (10) días para que se expresara en torno a la solicitud de la institución cooperativa. La notificación de este mandato también fue devuelta por el USPS (*"Attempted, Not Known"*).

El **29 de julio de 2008** el Tribunal de Primera Instancia emitió la Orden y Mandamiento de Ejecución de Sentencia para la venta en pública subasta del inmueble sujeto al gravamen hipotecario. Según consignó el Comisionado Especial en su Informe, el **1 de agosto de 2008** la Secretaria del Tribunal de Primera Instancia notificó ese mandato a la licenciada Ramírez Salcedo al PO Box 364033, San Juan, Puerto Rico 00936-4033.

Como consecuencia de tal suceso, el **8 de agosto de 2008**, la licenciada Ramírez Salcedo, por conducto de su representante legal, presentó una *Moción* [juramentada] *Solicitando Relevo de Sentencia Conforme a la Regla 49.2 de Procedimiento Civil Vigente sin Someterse a la Jurisdicción*. Impugnó la jurisdicción del tribunal sobre su persona, por supuestamente no haber sido emplazada de conformidad con lo prescrito en el ordenamiento procesal. Alegó, además, que no "tuvo conocimiento del pleito […] ya que las notificaciones de este Honorable Tribunal constan devueltas en el expediente del caso". *Moción Solicitando Relevo de Sentencia Conforme a la Regla 49.2 de Procedimiento Civil Vigente sin Someterse a*

*la Jurisdicción*, pág. 1, Anejo XVI del Informe de la Procuradora General. Rogó, entre otras cosas, que se dejara sin efecto la Sentencia, la Orden de Ejecución y todos los procedimientos del caso.

El **5 de septiembre de 2008** la parte demandante se opuso a la petición de la licenciada Ramírez Salcedo. Expuso que del expediente del propio Tribunal surgía que, en efecto, la aquí querellada había sido emplazada personalmente y que tenía conocimiento del pleito en su contra, ya que el 25 de marzo de 1999 había comparecido por derecho propio para solicitar su paralización.

Cuatro días más tarde, la licenciada Ramírez Salcedo, por conducto de su representación legal, presentó una *Moción Informativa* junto con una certificación registral expedida por el Registro de la Propiedad el **11 de agosto de 2008**. Indicó que de la certificación aludida no se desprendía carga alguna a favor de Poli-Coop.[14] Así pues, la querellada planteó que la obligación que gravaba su propiedad había sido saldada, por lo que correspondía que el demandante desistiera de la acción en su contra.[15]

---

[14]   La querellada <u>omitió</u> revelar que el **30 de abril de 2008** había presentado una instancia ante el Registro de la Propiedad, por medio de la cual solicitó la cancelación de la hipoteca en controversia por prescripción, al haber "transcurrido el término de veinte años desde su presentación al Registro de la Propiedad". Escritura de Instancia para Cancelación por Prescripción, Anejo XXXVII del Informe de la Procuradora General.

[15]   El **11 de septiembre de 2008** el Tribunal de Primera Instancia ordenó a la licenciada Ramírez Salcedo replicar al escrito en oposición sometido por la parte demandante días antes. Además, señaló que: "Los documentos que se nos presentan parecen indicar que las representaciones efectuadas ante el Tribunal por la codemandada Ramírez Salcedo son frívolas y temerarias". Orden, Anejo XIX del Informe de la Procuradora General.

Atendida la *Moción Informativa* de la aquí querellada, el **15 de septiembre de 2008** el tribunal de instancia dispuso: "Acredite la codemandada Ramírez Salcedo si retira su 'Moción [S]olicitando [R]elevo de Sentencia […]' […] dado que esta moción constituye una sumisión voluntaria a la jurisdicción personal […]." Orden, Anejo 4 del Informe Preliminar entre Abogados. El **24 de septiembre de 2008** la licenciada Ramírez Salcedo, a través de su representante legal, se sometió voluntariamente a la jurisdicción del tribunal. Consistente con lo anterior, el **1 de octubre de 2008** el foro de instancia aceptó la sumisión voluntaria de la querellada y entendió retirada su solicitud de relevo de sentencia.[16]

Entre tanto, el **13 de mayo de 2009** Poli-Coop sometió una *Moción en Cumplimiento de Orden, Informativa y Solicitud de Orden*. Manifestó que en una reunión celebrada el **2 de abril de 2009** con la licenciada Ramírez Salcedo y su representante legal, salió a relucir que la querellada había presentado una instancia en el Registro de la Propiedad en la cual solicitó la cancelación de la hipoteca que garantizaba la obligación con Poli-Coop por estar prescrita. Explicó, además, que a pesar de que la aquí querellada se había comprometido a entregarles copia de este documento, aún no lo había hecho. Por lo cual, solicitó al tribunal que ordenara a la abogada de epígrafe producir copia de la instancia registral y que,

---

[16]  Cabe señalar que el **22 de octubre de 2008** la licenciada Ramírez Salcedo interpuso otro escrito en el que reiteró no haber sido notificada de las incidencias del caso ni de la correspondiente Sentencia. Asimismo, alegó que el demandante había cobrado la deuda, ya que no fue hasta pasados nueve (9) años que requirió su ejecución. Por último, argumentó que dado a que habían pasado más de cinco (5) años de haberse dictado la Sentencia, no procedía su ejecución.

en su día, la declarara nula y ordenara al Registrador de la Propiedad cancelar ésta, así como cualquier otra anotación relacionada.

Durante la Conferencia con Antelación a Juicio celebrada el **10 de marzo de 2010,** el foro de primera instancia concluyó que no entraría a adjudicar si la Sentencia se había notificado adecuadamente, ya que luego de su notificación la deudora había comparecido voluntariamente y reconocido la obligación. Así pues, procedió a señalar una vista para el **26 de agosto de 2010,** con el fin de dilucidar el monto de la deuda a partir del reconocimiento voluntario de la deuda por parte de la querellada.

En lo pertinente, celebrada la vista en la fecha pautada,[17] los abogados de las partes informaron que sus representados habían alcanzado un acuerdo, a los efectos que la querellada le entregaría a la demandante un cheque de gerente o certificado por $80,000. El abogado de Poli-Coop solicitó un término de cuarenta y cinco (45) días para someter la estipulación a la consideración de su Junta de Síndicos. Así pues, el **25 de octubre de 2010** Poli-Coop compareció al foro de primera instancia para informar que, tanto el Presidente Ejecutivo de COSSEC, así como la Junta de

---

[17] Asimismo, cabe mencionar que el **23 de agosto de 2010,** tres días antes de esa vista, Poli-Coop presentó una moción en la cual solicitó: (1) traer al pleito como partes indispensables a *Money House,* Inc. y al Secretario de Vivienda y Desarrollo Urbano de los Estados Unidos (Secretario de Vivienda Federal), entidades financieras que gravaron la propiedad con unas hipotecas revertidas por las sumas de $247,000 y $370,500, respectivamente; (2) que se señalara una vista en los méritos para adjudicar la validez de la instancia registral, y (3) que una vez ésta se declarara nula, se ordenara la cancelación de toda inscripción basada en esa instancia. Durante la vista celebrada el **26 de agosto de 2010** el foro juzgador expresó que no dispondría de esa moción hasta tanto se determinara la existencia y monto de la deuda.

Síndicos de Poli-Coop, habían aceptado la oferta de pago. Solicitó, entonces, una orden dirigida a que la licenciada Ramírez Salcedo cumpliera de inmediato con los términos del acuerdo pactado.

El **25 de febrero de 2011** las partes redujeron a escrito el acuerdo transaccional y lo presentaron ante el tribunal de instancia. En vista de ello, el **9 de marzo de 2011** el foro juzgador le impartió su aprobación a dicho acuerdo y le concedió a la querellada treinta (30) días para su cumplimiento. Se le apercibió que, de lo contrario, se ejecutarían sus bienes en pago de la deuda.

Transcurrido poco más de dos meses sin cumplir con lo acordado, el **24 de mayo de 2011** Poli-Coop presentó una *Moción Solicitando [la] Anotación de[l] Embargo* en el Registro de la Propiedad por $80,000, más los intereses y gastos incurridos, sobre la propiedad inmueble de la querellada. Luego de considerar la postura de la abogada en torno a este asunto, el foro juzgador declaró *Ha Lugar* la petición de Poli-Coop y emitió la Orden de Embargo correspondiente.[18]

2. **Caso Civil Núm. KAC-2011-0736: <u>Cooperativa de Ahorro y Crédito de la Policía de Puerto Rico y otros v. Isis Nydia Ramírez Salcedo y otros</u>**

El **29 de junio de 2011** Poli-Coop, representada por su síndico liquidador COSSEC, interpuso una Demanda sobre nulidad y cancelación de inscripciones en el Registro de la

---

[18] En respuesta al mandato emitido por el Tribunal de Primera Instancia, el **6 de junio de 2011** la aquí querellada presentó una *Moción en Cumplimiento de Orden*. En síntesis, la licenciada Ramírez Salcedo indicó que, aunque estaba dispuesta a pagar, no contaba con la suma adeudada. Afirmó que, una vez consiguiera el dinero, se lo entregaría a su acreedor o, en la alternativa, efectuaría un plan de pago.

Propiedad, contra la querellada, *Money House* y el Secretario de Vivienda Federal. En síntesis, reclamó la anulación de la anotación consignada en el Registro de la Propiedad mediante la cual se canceló la hipoteca a su favor; la reinscripción del referido gravamen, y la cancelación de las inscripciones de las dos hipotecas revertidas. Después de varios incidentes procesales, que incluyeron el traslado del caso a la jurisdicción federal (*removal*) y su posterior devolución al foro estatal,[19] el **13 de agosto de 2012** el Tribunal de Primera Instancia acogió una moción de desistimiento presentada por Poli-Coop y dictó Sentencia de conformidad, archivando la acción sin perjuicio, a tenor con la Regla 39.1(b) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 39.1(b) (2010).

## II

El Código de Ética Profesional es un cuerpo normativo que recoge los estándares mínimos de conducta que deben acatar los abogados admitidos por este Tribunal, para beneficio de la ciudadanía, la profesión legal y las instituciones de justicia del país. In re Ortiz Guevara y Rivera Lozada, 2016 TSPR 55, 195 DPR ___ (2016); In re Guemárez Santiago, 191 DPR 611 (2014). Aunque la mayoría de las pautas que prescribe el Código de Ética Profesional se circunscriben a regular el desempeño del letrado en su faceta profesional, los

---

[19] El **21 de diciembre de 2011** el caso fue devuelto al Tribunal de Primera Instancia, después de que la parte demandante desistiera con perjuicio de su reclamación contra *Money House*, Inc. y el Secretario de Vivienda Federal. Más adelante, el **14 de mayo de 2012** el demandante solicitó el archivo sin perjuicio de la reclamación, debido a que exigiría la ejecución de los acuerdos en el caso KDC-1997-0125.

principios que comprenden los Cánones 35 y 38 trascienden su alcance hasta el ámbito privado. <u>In re Astacio Caraballo</u>, 149 DPR 790 (1999); <u>In re Padilla Rodríguez</u>, 145 DPR 536 (1998). Véase, además, S. Steidel Figueroa, <u>Ética y Responsabilidad Disciplinaria del Abogado</u>, Estados Unidos, Publicaciones JTS, 2010, pág. 44. Sin embargo, conviene destacar que no nos interesa toda actuación en su dimensión personal, sino solo aquella conducta que afecte las condiciones morales del abogado y que le haga indigno de pertenecer a este Foro. <u>In re Reyes Coreano</u>, 190 DPR 739 (2014); <u>In re Sepúlveda, Casiano</u>, 155 DPR 193 (2001).

**A. Canon 35 del Código de Ética Profesional[20]**

La **verdad** es una cualidad ínsita e inseparable del ejercicio de la abogacía. <u>In re Martínez, Odell II</u>, 148 DPR 636 (1999). En otras palabras, "[l]a profesión jurídica está predicada en la búsqueda y defensa de la verdad. Por lo tanto, resulta inherentemente contrario a su función que un abogado se desvíe de su obligación de ser sincero y honrado en toda faceta en que se desempeñe, ya sea en su vida profesional o privada". <u>In re Sierra Arce</u>, 192 DPR 140, 147 (2014).

---

**20** En lo pertinente, el Canon 35 del Código de Ética Profesional establece lo siguiente:

La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser **sincera y honrada.**

No es sincero ni honrado el utilizar medios que sean **inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos** o del derecho. […].

**El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávits u otros documentos, y al presentar causas.** […]. (Énfasis suplido).

Así pues, el Canon 35 de Ética Profesional impone a la clase togada del país el deber de proceder con integridad, sinceridad y honradez frente a todos y en todo escenario. In re Reyes Coreano, *supra*. Véanse, además, In re Sierra Arce, *supra*; In re Astacio Caraballo, *supra*. Este deber obliga a los abogados ante los tribunales, con sus representados, con las partes adversas y hasta en las relaciones profesionales con sus compañeros. In re Guemárez Santiago, *supra*; In re Astacio Caraballo, *supra*. Cónsono con lo anterior, para infringir el Canon 35 "[l]o fundamental es que se falte [objetivamente] a los valores de honradez y veracidad, pilares de la profesión legal". In re Reyes Coreano, *supra*, pág. 756. No es defensa, por consiguiente, no haber procedido deliberadamente, de mala fe, con la intención de engañar o defraudar, como tampoco que no se le haya causado perjuicio a un tercero. In re Reyes Coreano, *supra*; In re Nieves Nieves, 181 DPR 25 (2011); In re Astacio Caraballo, *supra*.

Es meritorio puntualizar que a todo abogado le está vedado proveer a los foros judiciales información falsa, inconsistente con la verdad, así como ocultar información cierta que deba ser revelada. In re Astacio Caraballo, *supra*. No es sincero ni honrado inducir a error al tribunal empleando artificios o una relación falsa de hechos o Derecho. In re Ayala Pagán I, 189 DPR 672 (2013). Cuando un abogado le miente a un tribunal bajo juramento para promover su causa, falta a su deber de actuar con integridad.

In re Padilla Rodríguez, *supra*; In re Currás Ortiz, 141 DPR 399 (1996). "La mentira degrada el carácter y envilece el espíritu y es antítesis de la conducta recta y honorable que el Código de Ética Profesional exige de todo abogado. La palabra de éste debe en todo momento ser tan buena y tan leal como la del propio magistrado, porque tanto el juez como el abogado son partícipes en una función excelsa que jamás debe ser lastimada por la falsedad". In re Ramos y Ferrer, 115 DPR 409, 412 (1984).

De igual forma, a la luz de este precepto ético un abogado no puede suscribir hechos inconsistentes con la realidad. In re Rodríguez Gerena, 2016 TSPR 47, 194 DPR ___ (2016); In re Belk, Serapión, 148 DPR 685 (1999). Todo jurista ostenta la obligación ineludible de asegurarse que los datos consignados en cada documento que firma o redacta son veraces. In re Ayala Vega I, *supra*; In re Martínez, Odell II, *supra*; In re Belk, Serapión, *supra*. La verdad es el principio sobre el cual se erige la confianza ciudadana en la profesión legal y en las instituciones de justicia, por lo que independientemente de si el abogado actúa en su función profesional o personal, su falta de sinceridad es absolutamente injustificable.

**B. Canon 38 del Código de Ética Profesional[21]**

El Canon 38 ordena a todo abogado a preservar el honor y la dignidad, baluartes de la práctica legal. "Comportarse a la altura de los principios éticos reseñados constituye piedra angular de la confianza que genera el hecho de pertenecer a esta ilustre profesión". In re Sierra Arce, *supra*, págs. 147-148. La conducta de los miembros de la clase togada no se evalúa con los mismos criterios que le aplican a un individuo particular. Íd. Ello amerita que se desempeñen siempre con el más escrupuloso sentido de responsabilidad que impone la función social que ejerce, tanto en su vida privada como en su ministerio profesional. Íd.; In re Reyes Coreano, *supra*; In re De León Rodríguez, 190 DPR 378 (2014). Cada uno de los abogados representa la imagen misma de la profesión del Derecho en el país, por lo que sus actos, buenos o malos, repercuten en la percepción que el público tiene sobre el sistema de administración de justicia. In re Sierra Arce, *supra*; In re Guemárez Santiago, *supra*.

---

**21**    Por su parte, el Canon 38 del Código de Ética Profesional prescribe lo siguiente:

El abogado deberá esforzarse, al máximo de su capacidad, en la **exaltación del honor y dignidad de su profesión**, aunque el así hacerlo conlleve sacrificios personales y debe **evitar hasta la apariencia de conducta profesional impropia**. […].

Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, **tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable**. […].

........

(Énfasis suplido).

### III

De la prueba reseñada se desprende que la letrada de epígrafe infringió los dos preceptos éticos que le fueran imputados. Ésta no observó el deber de sinceridad y honradez hacia los tribunales y las partes adversas que formula el Canon 35. Tampoco preservó el honor y la dignidad de la profesión legal, según lo exige el Canon 38. Con eso en mente, repasemos la conducta de la licenciada Ramírez Salcedo.

En la moción de relevo de sentencia presentada en agosto de 2008, **la querellada manifestó bajo juramento no tener conocimiento del pleito civil en su contra**, puesto que las notificaciones emitidas, con excepción de la Orden que concedió la paralización del caso, constaban devueltas en el expediente del caso.[22] Ahora bien, la licenciada Ramírez Salcedo incorporó esta aseveración bajo juramento en su escrito, a pesar de que se desprende del expediente judicial que, en efecto: 1) **fue emplazada personalmente en representación de la Sociedad Legal de Bienes Gananciales,**[23]

---

[22] El **14 de agosto de 1997** la querellada solicitó a la Oficina de Inspección de Notarías (ODIN) la autorización para el traslado de su obra protocolar. La dirección postal consignada en dicha carta fue MCS 283, Suite 112, 100 Gran Boulevard Paseos, San Juan, Puerto Rico 00926. El **4 de octubre de 1999** la licenciada Ramírez Salcedo le indicó por escrito a la entonces Directora de la Oficina de Inspección de Notarías su nueva dirección postal: GPO Box 36-4033, San Juan, Puerto Rico 00936-4033. De la Certificación emitida **el 3 de noviembre de 2015** por el Colegio de Abogados de Puerto Rico aparece que la dirección postal de la querellada del **14 de agosto de 1997** al **3 de octubre de 1999** era MCS 283, Suite 112, 100 Gran Boulevard Paseos, San Juan, Puerto Rico 00926; mientras que del **4 de octubre de 1999** hasta la fecha en la que se emitió la Certificación era GPO BOX 36-4033, San Juan, Puerto Rico 00936-4033. Finalmente, del Registro Único de Abogados y Abogadas (RUA) surge que la dirección postal de la licenciada Ramírez Salcedo a partir del **21 de mayo de 2001** es PO Box 364033, San Juan, Puerto Rico 00936-4033.

[23] El planteamiento incorporado por la licenciada Ramírez Salcedo en la moción de relevo de sentencia, a los efectos de <u>no</u> haber sido emplazada personalmente

**el 21 junio del año 1997** y, 2) **presentó un escrito por derecho propio, mediante el cual solicitó la paralización** del proceso judicial de conformidad con las protecciones que concede la Ley de Quiebra Federal, poco más de un mes después de haberse dictado la Sentencia en Rebeldía. A raíz de esa petición, el foro de instancia paralizó los trámites posteriores a la sentencia y le notificó su determinación a la dirección que la querellada consignó en su escrito. De los documentos que constan en los autos del caso, no surge que esa correspondencia específicamente llegara devuelta.

Los acontecimientos antes reseñados revelan que, ciertamente, **la licenciada Ramírez Salcedo sí conocía del pleito que enfrentaba y de la sentencia emitida.**[24] Por lo tanto, los planteamientos esbozados en apoyo a su solicitud sobre este particular carecían de base o fundamento alguno.

Por otro lado, la querellada adujo, también **infundadamente**, que **la deuda objeto de la reclamación judicial fue saldada**. La abogada de epígrafe compareció el **9 de septiembre de 2008** para negar la existencia del gravamen

_____

fue amplio y general, por lo que se presta a distintas interpretaciones que la letrada nunca aclaró en sus comparecencias.

No existe controversia en cuanto a que la querellada fue emplazada personalmente **únicamente** en representación de la Sociedad Legal de Bienes Gananciales compuesta por ella y su exesposo. No surge del récord que haya sido emplazada en su capacidad personal. Por tal razón, contrario a lo consignado por el Comisionado Especial en su Informe, entendemos que esa alegación, a pesar de haber sido retirada posteriormente, no carecía enteramente de méritos o fundamentos. Por tal razón, limitamos nuestro análisis al aspecto cognoscitivo de la abogada sobre el pleito en su contra.

**24** Recordemos que el **19 de abril de 2000,** la querellada suscribió un _Acuerdo de Restructuración de Pago_ que, aunque hizo referencia a un número de pleito distinto, tenía como objeto transigir la misma obligación. Además, aunque la abogada de epígrafe no compareció a defenderse ante el Tribunal, en el expediente constan documentos que corroboran que estaba negociando la deuda con el acreedor, por lo que tenía conocimiento del caso. Véanse notas al calce número 7 y 10.

hipotecario, lo cual acreditó con una certificación registral. **Omitió informarle, tanto al Tribunal de Primera Instancia como a la parte adversa**, que la anotación del gravamen hipotecario **fue cancelada a petición suya** meses antes, **no por pago**, sino en virtud del mecanismo dispuesto en la Ley Hipotecaria por haber transcurrido más de veinte años de constituida.[25] Asimismo, es importante señalar que no fue hasta mayo de 2009 que el foro juzgador advino en conocimiento de ese hecho, cuando Poli-Coop compareció a informarlo. Igualmente la defensa de saldo por pago resulta contraria a los fundamentos empleados por la abogada en la instancia presentada ante el Registro de la Propiedad para solicitar la cancelación de la hipoteca.

Es meritorio atender una de las defensas planteadas por la licenciada Ramírez Salcedo durante el curso del trámite disciplinario. La querellada planteó que las posturas alegadamente inconsistentes, fueron esgrimidas por su representante legal para impugnar la existencia, validez y, posteriormente, la cuantía de la deuda, por entender de buena fe que procedían en derecho. De ordinario, y en ausencia de circunstancias que justifiquen lo contrario, como bien fundamenta el Comisionado Especial en su Informe, todo litigante que escoge libremente a su representante legal no puede evitar los actos u omisiones de dicho agente. _Tenorio_

---

[25] Aunque la querellada fundamentó su petición al amparo del Art. 140 de la Ley Hipotecaria, 30 LPRA sec. 2464 (2005), coincidimos con la Procuradora General, quien interpretó que la cancelación del gravamen en el Registro de la Propiedad se efectuó por prescripción, de conformidad con el Art. 145 de la misma disposición estatutaria, 30 LPRA sec. 2969 (2005).

v. Hospital Dr. Pila, 159 DPR 777 (2003); Maldonado v. Srio.
de Rec. Naturales, 113 DPR 494 (1982). Además, como
profesional del campo del Derecho, la querellada debía tener
conocimiento acerca de las implicaciones éticas a las cuales
se exponía, **al hacer planteamientos infundados,
inconsistentes y que no se ajustaban a la verdad para
sustentar su defensa**.[26] Por último, es menester destacar que
la querellada en ningún momento expuso que la representante
legal de su caso lo hizo sin su consentimiento.

Como abogada de este foro, la querellada tenía la
obligación de actuar de acuerdo con los valores ínsitos a la
profesión del Derecho, recogidos en los Cánones 35 y 38 del
Código de Ética Profesional. Estos son la verdad, el honor y
la dignidad.

> [U]na vez un abogado es admitido al seno de la
> profesión, éste no puede desprenderse de sus
> obligaciones éticas simplemente señalando que actuaba
> como cliente y no como abogado […]. No existe tal
> dicotomía entre la vida cotidiana del ciudadano que
> es abogado y el ejercicio de su profesión. […].
> Dicho de otra manera, las responsabilidades éticas de
> los miembros de la profesión de abogado no tienen un
> horario de trabajo. (Bastardillas omitidas). In re
> Bryan, Vargas, *supra*, pág. 7. Véase, además, In re
> López González, 171 DPR 567 (2007).

En conclusión, las actuaciones impropias de la licenciada
Ramírez Salcedo quedaron establecidas con prueba clara,
robusta y convincente. De los hechos reseñados surge que la
querellada, como parte demandada en el caso de referencia, se
apartó de los deberes de sinceridad y honradez que exige el

---

[26] Recordemos que la abogada alegó inicialmente que la deuda había sido
saldada. Posteriormente, expresó que la sentencia no se podía ejecutar. Al
final, terminó reconociendo la deuda y expresó que nunca se había negado a pagar.

Canon 35. Por lo que resulta irrelevante si la licenciada Ramírez Salcedo actuó de mala fe o con la intención de engañar al foro judicial, o a la parte adversa. Asimismo, al no ajustarse a la veracidad de los hechos, la querellada tampoco se condujo de la manera digna y honorable que le exige el Código de Ética, lo que constituyó un quebrantamiento al Canon 38 del mismo cuerpo normativo. In re Astacio Caraballo, *supra*.

Con el objeto de evitar la arbitrariedad y promover una reglamentación disciplinaria uniforme y consistente, es importante examinar los precedentes en los que se formulan infracciones disciplinarias análogas. In re Rivera Nazario, 193 DPR 573 (2015). Ahora bien, al momento de imponer la medida disciplinaria, hay que reconocer que cada caso es único y que presenta circunstancias particulares que, en ocasiones, justifican que nos distanciemos de la sanción disciplinaria correspondiente.[27] In re Villalba Ojeda, 193 DPR 966 (2015); In re De León Rodríguez, *supra*. Lo importante es que "cuando nos apartemos de los precedentes similares, brindemos una explicación satisfactoria que justifique nuestro proceder". In re Villalba Ojeda, *supra*, pág. 20.

---

[27] Al momento de establecer la sanción disciplinaria que se le impondrá a un abogado, es importante tomar en consideración los siguientes factores: 1) la reputación del letrado en la comunidad; 2) su historial previo; 3) la aceptación y arrepentimiento sincero por la falta ética cometida; 4) si se trata de una conducta aislada; 5) si medió ánimo de lucro; 6) el perjuicio, si alguno, causado a alguna de las partes implicadas, y 7) cualquier otra consideración atenuante y agravante pertinente a los hechos. In re Miranda Daleccio, 193 DPR 753 (2015); Pueblo de Puerto Rico v. Adalberto Quiles Negrón, *et als.*, 193 DPR 609 (2015); In re Rivera Nazario, 193 DPR 573 (2015).

La querellada goza de buena reputación en la comunidad legal. Así lo acreditan miembros de la profesión que ofrecieron declaraciones juradas que hablan sobre la calidad de su desempeño profesional. La licenciada Ramírez Salcedo ha sido miembro del panel de abogados del Programa Pro Bono, Inc., Servicios Voluntarios del Colegio de Abogados (Pro Bono o programa) desde 1984. Su labor en favor del acceso a la justicia de las personas de bajos recursos económicos le ha merecido el reconocimiento del programa en múltiples ocasiones.[28] Esa entidad reconoció a la licenciada Ramírez Salcedo en los años 2004, 2006, 2008, 2009 y 2015 por su destacada labor y colaboración al servicio de las personas indigentes. En este contexto es importante señalar que, el **16 de octubre de 2015** Pro Bono la seleccionó como abogada destacada del año por poner sus servicios legales a la disposición de la clientela elegible del programa.

IV

En virtud de todo lo anterior, **censuramos enérgicamente** la conducta desplegada por la Lcda. Isis N. Ramírez Salcedo.[29] Le recordamos a la querellada que tiene el deber

---

[28] De una Certificación emitida por el Lcdo. José M. Vázquez Balasquide, Director Regional de la Oficina de San Juan de Pro Bono, Inc., Servicios Voluntarios del Colegio de Abogados de Puerto Rico, aparece que la querellada, como voluntaria de este programa, atiende los casos, principalmente en Derecho de Familia, desde su oficina y de forma gratuita.

[29] A continuación discutimos los precedentes en los que hemos dispensado una sanción similar basada en la conducta de ciertos abogados en el ámbito privado: 1) en In re Sierra Arce, 192 DPR 140 (2014), **censuramos enérgicamente** a una abogada que quebrantó los **Cánones 35 y 38** del Código de Ética Profesional; 2) por infringir esos mismos Cánones, **censuramos enérgicamente** a una abogada, en In re Bryan Picó, 150 DPR 1 (2000); 3) dispensamos idéntica sanción al **censurar enérgicamente** a una letrada por quebrantar los **Cánones 35 y 38** del Código de Ética Profesional, en In re Astacio Caraballo, 149 DPR 790 (1999); 4) en In re Padilla Rodríguez, 145 DPR 536 (1998), limitamos la sanción a una **amonestación** por el abogado haber infringido los **Cánones 35 y 38**; 5) **Censuramos enérgicamente**

de observar escrupulosamente cada uno de los postulados del Código de Ética Profesional. Asimismo, **le apercibimos que, de incurrir en otro acto que contravenga las normas de ese mismo cuerpo normativo, se expone a medidas disciplinarias más severas, incluyendo su suspensión del ejercicio de la abogacía.**

Notifíquese esta Opinión *Per Curiam* y Sentencia personalmente a la Lcda. Isis N. Ramírez Salcedo a través de la Oficina del Alguacil de este Tribunal.

Se dictará Sentencia de conformidad.

_____

a dos abogados por quebrantar el Canon 35, en <u>In re Martínez, Odell I</u>, 148 DPR 49 (1999); y 6) en <u>In re Belk, Serapión</u>, 148 DPR 685 (1999), circunscribimos la sanción de los abogados a una **censura enérgica** por faltar al Canon 35.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Isis N. Ramírez Salcedo          Núm. CP-2015-004          Conducta
                                                            Profesional


SENTENCIA

En San Juan, Puerto Rico, a 2 de agosto de 2016.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, censuramos enérgicamente a la Lcda. Isis N. Ramírez Salcedo por desplegar una conducta contraria a los Cánones 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, Cs. 35 y 38 (2012). Le recordamos a la abogada que tiene el deber de observar escrupulosamente cada uno de los postulados del Código de Ética Profesional. Asimismo, le apercibimos que, de incurrir en otro acto que contravenga las normas de ese mismo cuerpo normativo, se expone a medidas disciplinarias más severas, incluyendo su suspensión del ejercicio de la abogacía.

Notifíquese la Opinión *Per Curiam* que antecede y esta Sentencia personalmente a la Lcda. Isis N. Ramírez Salcedo a través de la Oficina del Alguacil de este Tribunal.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez concurre con el resultado y hace la siguiente expresión:

"El Juez Asociado señor Colón Pérez concurre con el resultado por entender que la conducta desplegada por la Lcda. Isis N. Ramírez Salcedo, la cual se apartó de lo dispuesto en los Cánones 35 y 38 del Código de Ética Profesional, debe conllevar la suspensión de la licenciada del ejercicio de la abogacía por un periodo de tres (3) meses."

La Jueza Presidenta Oronoz Rodríguez concurre sin Opinión escrita. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo
