EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br><br>Blanca Bonhomme Meléndez<br>(TS-10,611) | 2019 TSPR 105<br><br>202 DPR _____ |
| --- | --- |

Número del Caso: CP-2017-8


Fecha: 31 de mayo de 2019


Abogado de la querellada:

    Lcdo. Carlos Quirós Méndez

Oficina del Procurador General

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcdo. Joseph G. Feldstein del Valle
    Subprocurador General

    Lcda. Minnie H. Rodríguez López
    Procuradora General Auxiliar

    Lcda. Yaizamarie Lugo Fontánez
    Procuradora General Auxiliar

Comisionada Especial:

    Hon. Crisanta González Seda


Materia: Conducta Profesional: Censura por infracción a los Cánones 9, 12, 18, 19, 20 y 38 de Ética Profesional.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Blanca Bonhomme Meléndez      CP-2017-8      Conducta
     (TS-10,611)                         Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 31 de mayo de 2019.

En esta ocasión tenemos la oportunidad de plantearnos lo siguiente: ¿Se justifica que un miembro de la clase togada sujete su desempeño profesional a las exigencias de una organización sindical con la cual suscribió un contrato de servicios legales? Advertimos a los letrados que esta honrosa profesión exige de sus miembros que, al asumir la representación legal de un afiliado a una unión obrera que ofrece tales servicios, el desempeño profesional debe ser a la altura que requieren los Cánones de Ética Profesional.

# I

La Lcda. Blanca Bonhomme Meléndez (licenciada Bonhomme Meléndez) fue admitida al ejercicio de la abogacía el 3 de enero de 1994 y a la práctica de la notaría el 25 de abril del mismo año.

El 23 de septiembre de 2014 la Sra. Nilda Silva Vázquez (señora Silva Vázquez) presentó una queja en contra de la licenciada Bonhomme Meléndez por el desempeño profesional de la letrada en 2 casos en los cuales representaba a la quejosa ante la Comisión Apelativa de Servicio Público (CASP).

La señora Silva Vázquez era miembro de la Hermandad de Empleados de la Salud (HES o Unión), una organización *bonafide* de empleados públicos que representaba una cantidad de empleados en el Municipio de San Juan (Municipio). Entre los servicios que ofrecía la Unión a su matrícula era el asesoramiento y representación legal para casos de naturaleza laboral. Para noviembre de 2006, la licenciada Bonhomme Meléndez asumió la representación legal en el caso <u>Nilda Silva Vázquez v. Municipio de San Juan,</u> Caso Núm. 2006-02-0939, consolidado con el Caso Núm. 2006-11-0512 entre las mismas partes.[1] Aunque ambas causas de acción estaban relacionadas entre sí, el Caso Núm. 2006-02-0939 procuraba impugnar una determinación de la Comisión para Ventilar Querellas y Asuntos de Personal del Municipio de San Juan

---

[1] Cabe mencionar que la Lcda. Blanca Bonhomme Meléndez (licenciada Bonhomme Meléndez) solicitó la consolidación de los casos el 3 de julio de 2008. Dos años más tarde, la CASP concedió la solicitud mediante la orden emitida el 21 de septiembre de 2010.

(Comisión) de suspender a la señora Silva Vázquez de empleo y sueldo por 20 días laborables por haber agredido a una compañera de trabajo, en un periodo en el que la quejosa se encontraba recibiendo los servicios de la Corporación del Fondo del Seguro del Estado (CFSE).[2] En cuanto al Caso Núm. 2006-11-0512, la señora Silva Vázquez se proponía objetar la decisión del Municipio de desestimar una Querella que presentó por alegado trato desigual, hostigamiento laboral y psicológico que la había afectado negativamente, además de que no le habían entregado sus cheques, y que la suspensión de empleo y sueldo decretada era una medida disciplinaria injustificada.[3]

Ahora bien, durante el trámite del caso, la CASP emitió 3 órdenes para que la señora Silva Vázquez mostrara causa por la cual -ante el abandono y falta de interés en continuar con el reclamo- no debían imponer sanciones económicas. Por la misma razón, estas órdenes advertían la posibilidad de que la causa de acción fuera desestimada. Las órdenes aludidas de la CASP correspondían a las siguientes fechas:

---

[2] El Caso Núm. 2006-02-0939 se originó cuando el 8 de julio de 2005 la Directora de Recursos Humanos del Municipio de San Juan (Municipio) le entregó una carta de intención para destituir a la Sra. Nilda Silva Vázquez (señora Silva Vázquez) del puesto de Ayudante Administrativa del Departamento de Recreación y Deportes del Municipio por agredir física y verbalmente a una compañera de trabajo el 7 de junio de 2005. La agresión generó la querella policíaca número 2005-12829364, según la notificación de acción disciplinaria del 11 de enero de 2006.

[3] El Caso Núm. 2006-11-0512 surgió a raíz de que el Municipio no efectuó el depósito directo de los salarios de la señora Silva Vázquez al momento de la suspensión. Esto, según alegado por el Municipio, porque ésta no tenía licencias suficientes para cubrir el depósito directo, por lo que la porción correspondiente de sus salarios tenía que pagarse mediante el mecanismo de emisión de cheques vía nómina supletoria. Los salarios le fueron pagados posteriormente a la señora Silva Vázquez.

21 de septiembre de 2010, 24 de junio de 2014 y 7 de agosto de 2014. Esta inacción por parte de la letrada, según alegó la quejosa, provocó que la CASP desestimara su causa de acción con perjuicio mediante una Resolución emitida el 21 de agosto de 2014. La señora Silva Vázquez esbozó que a pesar de que recibía las notificaciones de la CASP, supo de esta información mediante el sistema de registro de mociones de la entidad apelativa. Añadió que la abogada nunca le informó el estado del caso ni se reunió con ella para discutir asunto alguno sobre sus reclamaciones consolidadas. Ante este cuadro y oportunamente, la señora Silva Vázquez solicitó la reconsideración de la determinación. No obstante, la CASP declaró "no ha lugar" el petitorio de la quejosa mediante una Resolución de 11 de septiembre de 2014. Afirmó, además, que el 22 de septiembre de 2014 visitó la CASP y supo que el 10 de septiembre de 2014 la letrada había presentado una *Moción de renuncia de representación legal*, esto sin haberle notificado que tomaría ese curso de acción.

Atendida la queja por la entonces Subsecretaria de este Tribunal, la Lcda. Camelia Montilla Alvarado, se solicitó a la abogada la correspondiente contestación. En su contestación, la licenciada Bonhomme Meléndez alegó que su contrato de servicios no era con la quejosa, sino con la organización sindical. Aseguró que, por la misma razón, la señora Silva Vázquez no emitió pago alguno de honorarios de abogado y expresó que representó a la quejosa porque era miembro de la HES. Asimismo, aseveró que la cuota de los

afiliados era de $12.00 mensuales y que la Unión utilizaba parte del dinero para el pago de los servicios legales que rendían los profesionales del Derecho que tenían contratos con la organización sindical. Expuso también que el acuerdo entre la HES y los afiliados que recibían los servicios legales (incluyendo a la quejosa) era que las consultas, las quejas y los servicios legales se canalizaban por conducto de la organización sindical y los abogados sólo comparecían a la Unión para la entrevista inicial, preparar al afiliado para la audiencia y representarle durante la vista.

En cuanto a las alegaciones alusivas a la falta de comunicación, la licenciada Bonhomme Meléndez expresó que la **HES nunca le informó que la señora Silva Vázquez quisiera reunirse con ella y que, además, la quejosa visitaba las oficinas de la Unión cuando lo entendía pertinente, pero sin avisar.**

Respecto a las causas de acción en cuestión, la letrada que había solicitado la consolidación de los casos en el 2008, sin embargo la CASP atendió y resolvió el petitorio mediante la orden de 21 de septiembre de 2010. Asimismo, manifestó que 8 meses antes de que se emitiera la orden que se alega no contestó, en enero de 2010 ella había indicado a la CASP su nueva dirección de récord, pero ésta se notificó a otra dirección. Con relación a esta orden en particular, la abogada entendió que no constituía un abandono toda vez que entendió que, para continuar con el reclamo, era

necesario que la CASP atendiera primero la solicitud de consolidación.

En cuanto a la alegación de la señora Silva Vázquez de que no se le notificó la renuncia a la representación legal, la licenciada Bonhomme Meléndez aseveró que la HES le informó que cesaría la representación legal de la quejosa, por lo que ésta debía coordinar con la Unión para recoger su expediente. De este modo, la señora Silva Vázquez tenía que, a través de la oficina de la HES, coordinar una reunión con la abogada para la entrega del expediente. Sin embargo, explicó que la señora Silva Vázquez visitaba las oficinas de la HES sin avisar y la abogada no podía presentarse para la entrega del expediente y brindarle la debida orientación. Alegó también la letrada que, previo a la presentación de la primera Apelación ante la CASP (Caso Núm. 2006-02-0939), en la Comisión se ventiló que la falta cometida por la señora Silva Vázquez requería la destitución del puesto, pero se redujo la sanción a una suspensión de empleo y sueldo por 20 días. Con esta determinación, el retiro de la señora Silva Vázquez no se afectó y en la actualidad recibe una pensión como empleada pública. Por su parte, la quejosa insistió en que la abogada no la representó durante la vista administrativa ante la Comisión, sino otro abogado y que su patrono desistió de la destitución porque el cargo impuesto era abandono de servicio mientras se encontraba en un descanso ordenado por la CFSE.

Este Tribunal ordenó a la Procuradora General que realizara la investigación y que presentara el correspondiente Informe.[4] En cumplimiento con nuestro requerimiento, la Procuradora General concluyó en su Informe que la letrada pudo haber incurrido en conducta contraria a los Cánones 9, 12, 18, 19, 20 y 38 de Ética Profesional.[5] En desacuerdo con el Informe, la licenciada Bonhomme Meléndez presentó una *Réplica al Informe de la Procuradora General*, en la que negó los fundamentos allí esbozados para sostener las alegaciones de infracción a los referidos cánones. **La abogada hizo un recuento de la relación contractual que tuvo por 14 años con la HES y que, como consecuencia de que la quejosa era miembro de la Unión, se convirtió en la representante legal de la señora Silva Vázquez en 2 de varios casos que ésta tenía presentados ante la CASP. Advirtió que la HES procuraba abaratar los gastos legales y por ello exigía que todo lo relacionado a los casos laborales se atendiera en las oficinas de la Unión.**

**Asimismo, la abogada sostuvo que no abandonó el caso, que siempre estuvo dispuesta a reunirse con la señora Silva Vázquez y nunca supo que existiera alguna razón para**

---

[4] En el momento en que se inició este procedimiento disciplinario en contra de la licenciada Bonhomme Meléndez, la Lcda. Margarita Mercado Echegaray (licenciada Mercado Echegaray) fungía como Procuradora General. En aquellas partes del relato de los hechos durante los cuales la licenciada Mercado Echegaray ostentaba dicho puesto, nos referiremos a ella como Procuradora General o la Oficina de la Procuradora General. No obstante, a partir de enero de 2017 el Lcdo. Luis R. Román Negrón asumió dicha encomienda, por lo que en el relato de los procesos realizados con posterioridad a dicha fecha nos referiremos a este último como Procurador General.

[5] 4 LPRA Ap. IX.

**comunicarse o reunirse con la quejosa.** Aseveró que cometió el error de no mantener evidencia de las gestiones profesionales que realizó en el caso de la quejosa. Ante esto, manifestó que se encontraba en estado de indefensión porque el expediente con sus anotaciones se le había entregado a la señora Silva Vázquez. Aceptó no haber cumplido con las últimas 2 de las órdenes de la CASP e insistió que su omisión en actuar se debió a un error de notificación de la agencia apelativa. Así pues, lamentó lo ocurrido y expuso que no fue el resultado de una actuación consciente ni voluntaria, por lo que ofreció disculpas.

Sin embargo, apuntó que, aun cuando el caso se hubiese considerado en los méritos, era casi imposible que la quejosa prevaleciera debido a que la agresión cometida no era vista con buenos ojos por los foros administrativos que atienden los casos como el de la señora Silva Vázquez. **Razonó que, en retrospección, el mejor curso debió ser que la HES se negara a presentar la Apelación para que así la quejosa contratara a un abogado de su preferencia y de esa forma no hubiese estado sometida a las medidas de control de gastos establecidas por la Unión.** Manifestó que de este Tribunal entender que había alguna oportunidad remota de que la quejosa hubiese prevalecido en su reclamo ante la CASP, la letrada estaría en la mejor disposición de pagarle directamente las 2 quincenas que la señora Silva Vázquez no cobró como resultado de la suspensión de empleo y sueldo.

Luego de evaluar el Informe, esta Curia ordenó a la Oficina de la Procuradora General que presentara la Querella. En ésta se imputó a la licenciada Bonhomme Meléndez la violación a los Cánones 9, 12, 18, 19, 20 y 38 de Ética Profesional, *supra.*

Por su parte, el 13 de junio de 2017, la licenciada Bonhomme Meléndez contestó la Querella y allí abundó sobre la relación contractual con la HES. **En específico, apuntó que la Unión asumió la responsabilidad de gestionar servicios de asesoramiento y representación legal de sus afiliados y, debido a la cuota que éstos pagaban mensualmente, la Unión procuraba mantener los gastos al nivel más bajo posible mediante el pago de honorarios a una tarifa reducida y medidas rigurosas de control de gastos.** Afirmó que lo anterior se agravaba con el hecho de que en las reclamaciones de los empleados municipales no se otorgaba para el pago de honorarios. **La abogada aseguró que la compensación por los servicios era un pago reducido que ofrecía la HES a los abogados y que en ocasiones la Unión se tardaba en pagar o no les pagaban los honorarios.** Sin embargo, añadió que aun en esa situación prestó el servicio a esos empleados, quienes de otra manera hubiesen quedado indefensos y ello hubiese provocado un serio problema de acceso a la justicia.

**Asimismo, la licenciada Bonhomme Meléndez desglosó que las medidas de control de gastos en relación al asesoramiento y representación legal consistían en las siguientes: (1) la selección de los afiliados que recibirían ese**

**beneficio; (2) la celebración de las reuniones entre el afiliado y el representante legal era en la sede de la Unión; (3) los oficiales de la HES eran los encargados de contactar -por el medio de comunicación que estimaren- al afiliado y citarlo a las reuniones; (4) las comunicaciones del representante legal con los afiliados se realizaban a través de oficiales de la HES, y finalmente (5) la Unión no informaba a los afiliados el número de teléfono ni dirección física de la oficina del representante legal. Aseguró que las medidas desglosadas y acordadas con la HES tenían un propósito dual: (1) que los afiliados comprendieran que la licenciada Bonhomme Meléndez prestaba servicios a la organización sindical y no era una abogada personal, y (2) limitar los gastos al mínimo necesario entre las reuniones y las llamadas telefónicas. Aseveró que la matrícula de la organización sindical era consciente y aceptaba (desde la entrevista inicial) que los asuntos de las reclamaciones tenían que coordinarse a través de la HES. También añadió que el control de gastos era una parte esencial de la relación contractual existente entre la letrada y la Unión.**

En cuanto a los cargos imputados, la licenciada Bonhomme Meléndez aceptó no haber atendido oportunamente las órdenes del 25 de junio de 2014 y el 7 de agosto de 2014 emitidas por la CASP y reiteró que debido a que no tenía el expediente original del caso con sus anotaciones se encontraba impedida de explicar su incumplimiento. Nuevamente expresó que mediante su intervención previo a la

presentación de la Apelación ante la CASP logró reducir la sanción impuesta de una destitución del servicio público a una suspensión de empleo y sueldo por 20 días laborables.

Para atender el asunto, este Tribunal designó a la Lcda. Crisanta González Seda como Comisionada Especial (Comisionada) mediante una Resolución emitida el 11 de abril de 2018. Ésta celebró una vista final a la que compareció la licenciada Bonhomme Meléndez con su representación legal, así como la abogada de la Oficina del Procurador General. Esta última informó a la Comisionada que al no poder contactar a la señora Silva Vázquez, ésta fue descartada como prueba testifical. Así las cosas, el Procurador General sometió el caso por el expediente de la CASP, el expediente relacionado a la Querella y la prueba estipulada por las partes. Entretanto, la licenciada Bonhomme Meléndez ofreció, sin objeción del Procurador General, y fue admitida en evidencia la buena reputación de la letrada según sustentada por las declaraciones juradas que prestaron 3 personas, así como una carta suscrita por el Sr. Sixto Alvelo, quien era el Director Ejecutivo de la HES.

Así pues, el 19 de octubre de 2018 la Comisionada presentó el Informe, en el que determinó que en efecto la letrada violó los Cánones de Ética Profesional según imputados en la Querella. No obstante, la Comisionada sugirió a esta Curia que, al evaluar la conducta de la licenciada Bonhomme Meléndez, consideráramos varias circunstancias atenuantes que obran en favor de la letrada, a saber:

La querellada goza de una excelente reputación en la comunidad según surge de las declaraciones juradas admitidas en evidencia, sin objeción de la OPG; nunca había sido objeto de una queja como abogada ni como notario, es decir que ésta constituye su primera falta; la quejosa no resultó perjudicada ya que pudo retirarse y recibir su pensión sin menoscabo alguno; la querellada solicitó disculpas por cualquier actuación que pudiera interpretarse que constituyó una violación a los cánones y ofreció devolver cualquier cantidad de dinero que se determinara en este procedimiento, cuya determinación no hicimos por no existir prueba sobre pérdida económica alguna por parte de la quejosa; la querellada ha demostrado su sincero arrepentimiento por cualquier perjuicio que pudiera haber ocasionado, y se trata de una conducta aislada, sin ánimo de lucro en su actuación.[6]

## II

El juramento que prestan los abogados para ejercer la profesión legal es un compromiso de lealtad con los deberes y responsabilidades que le imponen las leyes y el Código de Ética Profesional.[7] La abogacía es una disciplina profesional revestida de un alto interés público.[8] Aquellos que ostentan el privilegio de ser parte de esta honrosa profesión siempre deben considerar que cumplen con una función ciudadana que representa servicio, ética y ejemplo.[9] A tono con lo anterior, los abogados deben procurar que su desempeño genere o facilite la administración de la justicia de sus representados. De lo contrario, nos vemos en la obligación

---

[6] *Informe de la Comisionada Especial*, págs. 34-35.

[7] 4 LPRA Ap. IX; In re Ortiz Sánchez, 2019 TSPR 16, 201 DPR ___ (2019).

[8] In re Quiñones Ayala, 165 DPR 138, 144 (2005).

[9] Íd., pág. 145.

de ejercer nuestro poder inherente para disciplinar a los miembros de la profesión legal.

A.   El Canon 6 y 9 del Código de Ética Profesional

En varias instancias hemos señalado que cuando un abogado brinda servicios profesionales ante organismos administrativos observarán los mismos principios de ética profesional que exige su comportamiento en los tribunales.[10] Por ello, resolvimos que el Canon 6 del Código de Ética Profesional, 4 LPRA Ap. IX, "regula la conducta de los miembros de la clase togada ante las agencias gubernamentales".[11] Sobre este particular, este Tribunal explicó que "[e]n casos ante organismos administrativos, el Canon 6 del Código de Ética Profesional, *supra*, es el que incorpora las normas que bajo el Canon 9, *supra*, se establecen para los abogados ante foros judiciales".[12] Asimismo, hemos dejado claro que el profesional del Derecho que no atienda "las órdenes de […] una agencia administrativa en virtud del Canon 6 del Código de Ética Profesional, *supra*, constituye un grave insulto a su autoridad, en clara violación al mandato expreso del Canon 9, *supra*".[13]

Ahora bien, en el presente caso la licenciada Bonhomme Meléndez no refutó, sino que admitió y estipuló que incumplió

---

[10] Véanse Canon 6 del Código de Ética Profesional, 4 LPRA Ap. IX; In re Valentín Custodio, *supra*, págs. 541-542; In re Pietri Castellón, 185 DPR 982, 991 (2012).

[11] In re Morales Velázquez, 156 DPR 212, 217 (2002).

[12] Íd., pág. 219.

[13] In re Pestaña Segovia, 192 DPR 485, 493 (2015), In re Valentín Custodio, *supra*, pág. 542.

con 2 de las órdenes de la CASP, y no hay duda que esta conducta constituyó una violación inequívoca del Canon 9, *supra*. Aclarado este asunto, analizaremos las actuaciones de la licenciada Bonhomme Meléndez a la luz de los cánones 12, 18, 19, 20 y 38 del Código de Ética Profesional, *supra*.

B.   El Canon 12 del Código de Ética Profesional

Según el Canon 12 de Ética Profesional, 4 LPRA Ap. IX, todo abogado tiene el deber hacia las partes y los compañeros abogados de desplegar todas las diligencias necesarias para evitar dilaciones indebidas en la tramitación y solución de los casos.[14] De modo que los abogados que entorpezcan u obstaculicen la resolución de un caso y que así arriesguen la causa de acción de su cliente debido a la falta de diligencia y puntualidad en el trámite ello claramente constituye una violación patente a dicho postulado.[15]

C.   El Canon 18 del Código de Ética Profesional

Por otra parte, el Canon 18 de Ética Profesional, 4 LPRA Ap. IX, insta a los miembros de la profesión legal a que sean diligentes en la defensa de los intereses del cliente. Por

---

[14] El Canon 12 del Código de Ética Profesional, 4 LPRA Ap. IX, establece lo siguiente:

> Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protección de los derechos sustanciales de su cliente.

[15] In re Valentín Custodio, *supra*, pág. 543; In re Pietri Castellón, *supra* pág. 991; In re Vélez Báez, 176 DPR 201, 208 (2009); In re Cuevas Velázquez, 174 DPR 433, 441 (2008); In re Rosado Nieves, 159 DPR 746, 757 (2003); In re Grau Díaz, 154 DPR 70, 75-76 (2001).

lo tanto, si no pueden prepararse y actuar en la forma en que la profesión lo exige, no deben asumir la representación legal.[16] Así, para defender los derechos de un cliente de forma diligente, el desempeño profesional se acompaña con el más profundo saber y responsabilidad.

Como corolario del deber plasmado en este canon, en In re Zayas Nieves, 181 DPR 49, 59 (2011), advertimos que la firma de un abogado en un escrito lo convierte en la representación legal de la persona por quien comparece. Es decir, éste pasa a ser su cliente y desde entonces debe descargar responsable, competente y diligentemente su gestión profesional. Así que, aceptada la representación legal sin que luego de ello se realicen los encargos profesionales correspondientes, se incumple irremediablemente con el Canon 18, *supra*. La razón es muy simple, pues "la representación legal adecuada requiere que se ejerza la profesión con celo, cuidado y prudencia".[17]

---

[16] El Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, dispone:

> Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

> Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

[17] In re Pietri Castellón, *supra*, pág. 992; In re Acosta Grubb, 119 DPR 595, 602 (1987).

D.   El Canon 19 del Código de Ética Profesional

El Canon 19 de Ética Profesional, 4 LPRA Ap. IX, exige que todo abogado mantenga al cliente informado de los asuntos importantes del caso en el cual lo representa.[18] Resulta en una conducta incompatible con el Canon 19, *supra*, el que un miembro de la clase togada asuma la representación legal ante un ente administrativo y posteriormente no mantenga notificado e informado al cliente de los asuntos importantes del caso que atiende.

E.   El Canon 20 del Código de Ética Profesional

Se exige de todo abogado que, al momento de renunciar, cumpla con las especificaciones que dispone el Canon 20 de Ética Profesional, 4 LPRA Ap. IX. El postulado contiene los pasos que la clase togada seguirá para fines de culminar la representación legal con un cliente. Hemos expresado que el Canon 20, *supra*, le "impone obligaciones taxativas a los letrados independientemente de si han comparecido o no ante el tribunal a nombre de su cliente".[19] En In re González Rodríguez, 2018 TSPR 165, 201 DPR ___ (2018), expusimos que:

> previo a renunciar a la representación, todo abogado vendrá obligado a realizar aquellas gestiones necesarias para evitar el menoscabo de los derechos de su cliente tales como: notificarle de su renuncia; orientarle debidamente sobre la necesidad de una nueva representación legal cuando sea necesario; concederle tiempo para procurar una nueva representación legal; y advertirle sobre

---

[18] In re González Rodríguez, 2018 TSPR 165, 201 DPR ___ (2018). El Canon 19 del Código de Ética Profesional, 4 LPRA Ap. IX, expone que:

> El abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado.

[19] In re González Rodríguez, *supra*.

fechas límites y términos que impacten su causa de acción.

Como parte del proceso de renuncia, igualmente se le exige al abogado que le entregue a su cliente el expediente, así como todo documento relacionado con el caso. […] No podemos perder de vista que, tanto el expediente, como la causa de acción, pertenecen exclusivamente al cliente. […] Esta obligación debe cumplirse sin dilación. Es decir, tan pronto el abogado renuncie a la representación legal o cuando el cliente así lo solicite. (Citas omitidas).

Como parte del proceso de la renuncia, se encuentra la obligación de todo letrado de "reembolsar inmediatamente cualquier cantidad que le haya sido pagada en honorarios por servicios que no se han prestado".[20]

F.    El Canon 38 del Código de Ética Profesional

Al delinear los postulados éticos enunciados en el Canon 38 de Ética Profesional, 4 LPRA Ap. IX, expresamente le exige a todo abogado "esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia". En este contexto, y conforme a la confianza depositada en el título que ostenta y el rol de la clase togada en la sociedad, corresponde a los abogados proceder de manera digna y honorable en el desempeño de su vida profesional.[21] Por lo tanto, todo abogado que no se

---

[20] In re Santiago Méndez, 2018 TSPR 191, 201 DPR ___ (2018) citando a In re Martí Rodríguez, 194 DPR 467, 474 (2016); In re Pestaña Segovia, supra, 495.

[21] In re Nazario Díaz, 198 DPR 793, 806 (2017); In re Ramírez Salcedo, 196 DPR 136, 151 (2016).

conduce digna y honorablemente infringe el Canon 38, *supra*.[22] Cabe destacar que la conducta de un letrado no puede examinarse de manera individual y aislada del ámbito público. Según reiterado, los abogados reflejan la imagen de la profesión, por lo que vienen obligados a comportarse con el más escrupuloso sentido de responsabilidad acorde la función social que ejercen.[23] De manera que "la confianza, [el] respeto [y la] imagen que la sociedad deposita en cada uno de los abogados, en la profesión y en la institución de la justicia desmerece cuando la actuación del jurista representa incorrección".[24]

Por otro lado, este Tribunal ha señalado que al determinar la sanción disciplinaria que habrá de imponerse a un abogado que haya incurrido en conducta reñida con los postulados éticos que guían el desempeño en la profesión legal, pueden tomarse en cuenta los siguientes factores:

> (1) la reputación del abogado en la comunidad; (2) su historial previo; (3) si constituye su primera falta y si no ha causado perjuicio a alguna parte; (4) la aceptación y el arrepentimiento sincero por las imputaciones; (5) la defensa frívola de su conducta; (6) si se trata de una conducta aislada; (7) el ánimo de lucro, y (8) cualquier otra consideración atenuante o agravante aplicable a los hechos.[25]

---

[22] In re García Vega, 189 DPR 741 (2013).

[23] In re Nazario Díaz, *supra*, pág. 806.

[24] In re Nazario Díaz, *supra*, pág. 806, citando a In re Irizarry Rodríguez, 193 DPR 633, 666 (2015).

[25] In re Rivera Nazario, 193 DPR 573, 587 (2015).

**III**

Ciertamente, la licenciada Bonhomme Meléndez quebrantó los Cánones 9, 12, 18, 19, 20 y 38 de Ética Profesional, *supra*, al: (1) incumplir con las órdenes emitidas por la CASP; (2) no atender las órdenes con prontitud y diligencia; (3) actuar de manera incompetente en relación con los intereses de la quejosa, a quien representaba ante la CASP; (4) no informar ni orientar a la señora Silva Vázquez de los asuntos importantes del caso, tales como las determinaciones que le fueron adversas; (5) renunciar a la representación legal de la señora Silva Vázquez luego de que la CASP desestimara los casos con perjuicio, ello sin antes informarle a la quejosa -al menos- por conducto de la HES ni orientarla al respecto, así como tampoco tomar acción alguna para protegerla y, finalmente, (6) revisar la totalidad del expediente y las razones expuestas por la letrada es claro que el desempeño profesional de ésta no exaltó el honor y la dignidad de la profesión a la que pertenece.

Ahora bien, no podemos culminar el análisis sin que brevemente contestemos las siguientes interrogantes: ¿De quién era abogada la licenciada Bonhomme Meléndez? ¿Hacia dónde debía inclinarse la lealtad de su desempeño profesional? La abogada reiteradamente y desde el inicio expuso que, por el contrato de servicios suscrito con la organización sindical, ella era abogada de la HES y no de la señora Silva Vázquez. Durante todo el trámite disciplinario defendió su postura de que, como parte esencial del contrato,

su gestión profesional estaba atada a las medidas de control de gastos que le imponía la Unión. Sin embargo, en un contrasentido, la licenciada Bonhomme Meléndez reconoció que se convirtió en la abogada de la señora Silva Vázquez cuando asumió la representación legal ante la CASP. Esta situación es distinta a la expuesta por el Hon. Sigfrido Steidel Figueroa cuando plantea que un abogado representa legalmente a una unión en una causa de acción en contra de alguno de los miembros del gremio.[26] Es evidente que en ese escenario el abogado debe total lealtad a la organización sindical.

**No obstante, si un abogado representa legalmente a un afiliado de un gremio en una causa de acción, éste se convierte en su cliente. Por ende, el desempeño profesional del abogado que atiende un caso de un miembro de una unión deberá ser a la altura que requiere el Código de Ética Profesional y no al contrato de servicios que el letrado haya suscrito con el gremio. La clase togada debe recordar que, al asumir la representación legal, por quien comparece es por el afiliado de la organización sindical y no por la unión obrera.** Un abogado no está obligado a suscribir un contrato con el cual no esté de acuerdo. Los abogados no pueden escudarse de las obligaciones y responsabilidades que emanen de un contrato de servicios que sean contrarias, incluso, a los postulados del Código de Ética Profesional.

---

[26] S. Steidel Figueroa, <u>Ética para Juristas: Ética del Abogado y Responsabilidad Disciplinaria</u>, San Juan, Ed. Situm, 2016, sec. 3.18, pág. 194, citando <u>In re Carreras Rovira y Suárez Zayas</u>, 115 DPR 778 (1984) e <u>In re Rojas Lugo</u>, 114 DPR 687 (1983).

Como señalamos, la conducta desplegada por la licenciada Bonhomme Meléndez infringió nuestro Código de Ética Profesional. No obstante, saltan a la vista las circunstancias atenuantes contempladas por la Comisionada -con las que estamos de acuerdo- y otras evaluadas por esta Curia a la hora de ejercer nuestra función disciplinaria.

Surge del expediente que, al momento de los hechos, la licenciada Bonhomme Meléndez contaba con 20 años de experiencia en la profesión legal. Su práctica legal se ha concentrado en casos de naturaleza laboral y administrativa con clientes privados, pero mayormente ha ofrecido sus servicios a organizaciones sindicales, tales como: la Federación Laborista, la Hermandad de Empleados del Departamento de la Familia y la HES. En cuanto a esta última Unión, la letrada ofreció sus servicios desde el 2001 hasta el 2015 porque la organización sindical quedó disuelta por decisiones tomadas por la administración del Municipio para el 2013. Las declaraciones juradas evaluadas por la Comisionada reflejan que la abogada ostenta una excelente reputación. Fuera de la presente Querella, la letrada nunca había sido objeto de una investigación como abogada ni como notaria.

Además de lo anterior, desconocemos el momento preciso, pero la quejosa pudo retirarse como empleada del Municipio por los años de servicio, disfrutando así de la pensión que en un momento dado tuvo temor de perder debido a los sucesos ocurridos por la agresión. El expediente refleja

que el dinero relacionado al Caso Núm. 2006-11-0512 fue entregado por el Municipio a la quejosa. Asimismo, notamos que a pesar de la insistencia de la señora Silva Vázquez en reiterar ante este Foro que la letrada no la representó adecuadamente, nunca presentó evidencia de los daños que sufrió, si alguno, como consecuencia de la desestimación con perjuicio de las reclamaciones. Igualmente, la abogada reconoció que cometió un error al no contestar las órdenes y lamentó que la consecuencia de sus acciones fuera la desestimación con perjuicio de los casos, mostrando así un arrepentimiento genuino. Aseguró que, de este Tribunal entender que la quejosa hubiese prevalecido en los méritos de sus reclamaciones o que se interpretara que sus actuaciones constituyeron una violación a los Cánones de Ética Profesional, estaba en la mejor disposición de pagarle a la señora Silva Vázquez la cantidad de dinero que esta Curia determinara. El expediente refleja, además, que la conducta desplegada no fue en ánimo de lucro.

Nos parece oportuno recalcar que, durante el trámite ante la Comisionada, el Procurador General nunca logró contactar a la señora Silva Vázquez para que compareciera como prueba testifical y, por ello, tuvo que ser descartada como testigo. Como mencionamos, a pesar de la realidad de la desestimación de las causas de acción con perjuicio, no existe prueba clara, robusta y convincente sobre pérdida económica alguna que requiera que la licenciada Bonhomme

Meléndez tenga que desembolsar dinero para resarcir a la señora Silva Vázquez.

**IV**

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede y en consideración a las circunstancias atenuantes esbozadas que obran en favor de la licenciada Bonhomme Meléndez, este Tribunal le censura por sus actuaciones. Sin embargo, le advertimos a la abogada sobre la importancia de que si bien un miembro de la profesión legal debe guardarle fidelidad a un cliente conforme al acuerdo suscrito, en el desempeño de sus deberes claramente ningún contrato de servicio profesional debe ir por encima de las exigencias de los Cánones de Ética Profesional que rigen a los profesionales del Derecho.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Blanca Bonhomme Meléndez        CP-2017-8        Conducta
    (TS-10,611)                                                    Profesional

SENTENCIA

En San Juan, Puerto Rico, a 31 de mayo de 2019.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se censuran las actuaciones de la Lcda. Blanca Bonhomme Meléndez. Asimismo, le advertimos sobre la importancia de que si bien un miembro de la profesión legal debe guardarle fidelidad a un cliente conforme al acuerdo suscrito, en el desempeño de sus deberes claramente ningún contrato de servicio profesional debe ir por encima de las exigencias de los Cánones de Ética Profesional que rigen a los profesionales del Derecho.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y la Juez Asociada señora Rodríguez Rodríguez no intervinieron.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo