EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Juan M. Maldonado De Jesús (TS-15,053) | 2022 TSPR 06 <br><br> 208 DPR |

Número del Caso: AB-2020-0082

Fecha: 19 de enero de 2022

Oficina de Inspección de Notarías:

    Lcdo. Manuel E. Ávila De Jesús
    Director

Oficina del Procurador General:

    Lcdo. Javier O. Sepúlveda Rodríguez
    Subprocurador General

    Lcda. Yaizamarie Lugo Fontánez
    Procuradora General Auxiliar

Abogados del promovido:

    Lcda. Mayra E. López Mulero
    Lcdo. Gabriel M. Vázquez Segarra

Materia: Conducta Profesional – Suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría por infringir los Arts. 2, 12, 56 y 57 de la Ley Notarial de Puerto Rico; las Reglas 65, 66 y 67 del Reglamento Notarial de Puerto Rico; y los Cánones 18, 35 y 38 del Código de Ética Profesional. La suspensión será efectiva 19 de enero 2022, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Juan M. Maldonado De Jesús      AB-2020-0082

*PER CURIAM*

En San Juan, Puerto Rico, a 19 de enero de 2022.

Nuevamente nos vemos en la obligación de suspender indefinidamente del ejercicio de la abogacía y de la notaría a un miembro de la profesión legal, esta vez, por éste infringir los Arts. 2, 12, 56 y 57 de la Ley Notarial de Puerto Rico, *infra*; las Reglas 65, 66 y 67 del Reglamento Notarial de Puerto Rico, *infra*; y los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*. Veamos.

I.

El Lcdo. Juan Miguel Maldonado De Jesús (en adelante, "licenciado Maldonado De Jesús") fue admitido al ejercicio de la abogacía el 13 de julio de 2004 y al ejercicio de la notaría el 31 de enero de 2005.

Allá para el 21 de julio de 2020, el Hon. Denis Márquez Lebrón, Representante por Acumulación y Portavoz del Partido Independentista Puertorriqueño en la Cámara de Representantes del Estado Libre Asociado de Puerto Rico (en adelante, "Representante Márquez Lebrón"), presentó ante este Tribunal una queja disciplinaria en contra del mencionado letrado. Junto a la queja de referencia, éste anejó determinado informe legislativo -- relacionado con la Resolución de la Cámara 1741 de 31 de marzo de 2020 (en adelante, "Resolución 1741")[1] -- del cual se desprende que el licenciado Maldonado De Jesús pudo haber incurrido en posibles violaciones a la Ley Notarial de Puerto Rico, *infra*, al Reglamento Notarial de Puerto Rico, *infra*, y al Código de Ética Profesional, *infra*.[2] Ello, porque presuntamente el referido letrado -- en el contexto del proceso de compra, distribución, manejo y administración de las pruebas para detectar el COVID-19, pandemia que para ese momento comenzaba a afectar gravemente a nuestro País -- había autorizado una declaración jurada sin la presencia del otorgante, pero incluyendo su firma; ello en perjuicio de la fe pública notarial; por incluir tal firma no autorizada en

---

[1] En lo pertinente, la Resolución 1741 fue presentada a los fines de "ordenar a la Comisión [de] Salud de la Cámara de Representantes de Puerto Rico, [a] realizar una investigación de forma expedita y particular sobre [...] el proceso de compra, distribución, manejo y administración de las pruebas para detectar el COVID-19". R. de la C. 1741 de 31 de marzo de 2020, 7ma Sesión Ordinaria, 18va Asamblea Legislativa, pág. 1.

[2] Dicho informe se titula *Segundo Informe de la Delegación del Partido Independentista Puertorriqueño en torno a la Resolución de la Cámara 1741*.

un contrato gubernamental y; por hacer falsas representaciones al gobierno.

Posteriormente, y en lo relacionado a este asunto, el 23 de septiembre de 2020 la Comisión de Salud de la Cámara de Representantes de Puerto Rico (en adelante, "Cámara de Representantes"), presidida en ese entonces por el Hon. Juan Oscar Morales Rodríguez (en adelante, "Representante Morales Rodríguez"), refirió a este Foro, -- así como a otras entidades públicas estatales y federales --, cierto informe legislativo. El mencionado informe contenía los hallazgos preliminares de determinada investigación realizada por la Asamblea Legislativa, -- según fue autorizada por la precitada Resolución 1741 --, referente a posibles violaciones legales, éticas y/o administrativas por parte de ciertos funcionarios públicos y ciudadanos privados, incluyendo al licenciado Maldonado De Jesús.[3] Este informe fue unido a la queja presentada por el Representante Márquez Lebrón en contra del referido letrado.

---

[3] **En esencia, el aludido informe -- titulado *Segundo Informe Parcial* -- sostiene que el licenciado Maldonado De Jesús pudo haber incurrido en violaciones al Art. 56 de la Ley Notarial de Puerto Rico, *infra*, a la Regla 67 del Reglamento Notarial de Puerto Rico, *infra*, y al Canon 35 del Código de Ética Profesional, *infra*, al haber otorgado una declaración jurada sin la presencia del otorgante. Esto, luego de que el mencionado letrado presuntamente autorizara una Resolución Corporativa de Apex General Contractors (en adelante, "Apex") y diera fe de que la misma había sido jurada y suscrita ante sí por el señor Robert Rodríguez López (en adelante, "señor Rodríguez López"), cuando este último -- en una vista pública realizada por la Comisión de Salud de la Cámara de Representantes y bajo juramento -- negó haber firmado el referido documento y presentó evidencia de su firma real ante la mencionada Comisión. Surge, además, que tal conducta podría constituir una posible falsificación de la firma en un documento que fue presentado de manera fraudulenta ante el Departamento de Salud de Puerto Rico.**

Enterado de lo anterior, el 23 de noviembre de 2020 el licenciado Maldonado De Jesús presentó su contestación a la queja de epígrafe. En su escrito, éste refutó las aseveraciones realizadas en su contra y sostuvo que la intención detrás de éstas era obtener ventaja política, tomando en cuenta el contexto en el cual fue presentada.

Como parte del relato de hechos comprendido en dicho escrito, el referido letrado manifestó que -- en medio del proceso de compra, distribución, manejo y administración de las pruebas para detectar el COVID-19 -- contactó al señor Rodríguez López, principal oficial de la empresa Apex, con el propósito de que la mencionada compañía fuera una de las entidades que pudiese suplir al Departamento de Salud de Puerto Rico las referidas pruebas. Expresó que el señor Rodríguez López le autorizó a realizar tales gestiones y le pidió a éste servir de enlace entre Apex y el gobierno de Puerto Rico. Así, también, el licenciado Maldonado De Jesús indicó que el señor Rodríguez López decidió unir al esfuerzo al señor Aaron Vick, en calidad de oficial de Apex, para que este último representara a la aludida empresa en la transacción en cuestión; decisión que requería se hiciese una Resolución Corporativa a tales fines.

**En vista de ello, -- y dado a que, como consecuencia de las medidas restrictivas a raíz de la pandemia del COVID-19, el referido letrado no podía tener contacto físico con el señor Rodríguez López --, el licenciado Maldonado De Jesús**

señaló que éste le suplió su firma en formato digital para que la plasmara tanto en la Resolución Corporativa como en cualquier otro documento que fuese necesario para formalizar la compra. Sobre este particular, el referido letrado admitió que "en vez de plasmar la firma digital, decidió escribir la firma del Sr. Rodríguez [López] en la Resolución Corporativa porque no era posible en ese momento encontrarse en persona". (Énfasis suplido).[4] **A esto, añadió que cumplió con los demás requerimientos para autorizar la declaración jurada de la Resolución Corporativa, es decir, que "le plasmó el Sello de Asistencia Legal, le incluyó el número de affidavit, lo firmó y ponchó con su sello notarial, lo incluyó en su Registro de Testimonios y lo reportó en su Índice Mensual".** (Énfasis suplido).[5]

**Como parte de la discusión de la conducta imputada y atenuantes en su contestación a la queja, el licenciado Maldonado De Jesús afirmó "que pudo haber incurrido en un error de juicio y en su consecuencia acept[ó] que es un hecho cierto que la firma de la Resolución Corporativa fue hecha por él".** (Énfasis suplido).[6] **Aseveró, además, que su conducta "atentó contra la fe pública notarial" y que ésta "apuntaría a que posiblemente incumplió con el Canon 35 del Código de Ética Profesional".** (Énfasis suplido).[7] **Asimismo, el referido**

---

[4] Véase, Contestación a queja, pág. 6.

[5] *Íd.*

[6] *Íd.*, pág. 7.

**letrado reconoció "su error de juicio al plasmar la firma del declarante en la Resolución Corporativa y se encuentra sumamente arrepentido de haberle fallado a su función notarial"**. (Énfasis suplido).[8]

En igual tono, el licenciado Maldonado De Jesús afirmó que el interés apremiante del gobierno en obtener las pruebas de COVID-19 de manera apresurada le causó un "furor caótico" que nubló su juicio y provocó el fallo en el cumplimiento de su deber como notario.[9] Por último, en el antedicho escrito el referido letrado expresó que la pandemia del COVID-19 fue un evento desconocido, que no había precedentes sobre el proceso de compra de pruebas para la detección del virus y que "[l]a prisa y el desorden con el que se llevó a cabo este proceso de compra debe tomarse en cuenta como parte de lo que llevó [a éste] a cometer este error de juicio".[10]

Evaluados los planteamientos de las partes, así como los informes legislativos a los que hemos hecho referencia, el 11 de febrero de 2021 referimos este asunto a la Oficina de Inspección de Notarías (en adelante, "ODIN") y a la Oficina del Procurador General, para que dichas dependencias realizaran las investigaciones de rigor y rindieran los informes correspondientes.

---

[7] *Íd.*

[8] *Íd.*

[9] *Íd.*

[10] *Íd.*, pág. 9.

Cumpliendo con lo ordenado, el 17 de marzo de 2021 la ODIN presentó ante la Secretaría de este Foro determinado *Informe* en el cual concluyó que -- con su conducta -- el licenciado Maldonado De Jesús incurrió en violación de los Arts. 2, 56 y 57 de la Ley Notarial de Puerto Rico, *infra*, las Reglas 65, 66 y 67 del Reglamento Notarial de Puerto Rico, *infra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*. Todo ello, por el referido letrado haber firmado, -- en lugar del requirente --, en un testimonio de legitimación de firma; por haber certificado un hecho falso en la Resolución Corporativa de Apex; así como por acreditar información falsa en el Registro de Testimonios y en el Índice Mensual de Actividad Notarial correspondiente al mes de marzo del año 2020.

Si bien la ODIN expresó que evaluó como atenuantes que la queja de epígrafe es el primer proceso disciplinario al que se enfrenta el licenciado Maldonado De Jesús, así como la expresión de arrepentimiento por sus actos, determinó que "el impacto en la esfera pública de los actos consumados, admitidos [por el referido letrado] y probados resultó en detrimento para la profesión notarial".[11] Como consecuencia de esto, recomendó que el mencionado letrado fuera suspendido inmediata e indefinidamente del ejercicio de la notaría.

---

[11] Véase, Informe, pág. 9.

Así las cosas, el 28 de abril de 2021 el licenciado Maldonado De Jesús presentó un escrito intitulado *Réplica a informe de la Oficina de Inspección de Notarías*. En síntesis, éste aceptó su falta, ofreció disculpas a esta Curia y se allanó a la sanción sugerida por la ODIN de suspensión inmediata del ejercicio de la notaría. Sin embargo, el referido letrado suplicó que se tome en consideración el marco fáctico que contextualizó su conducta y solicitó que la suspensión del ejercicio de la notaría no fuese indefinida, sino por un periodo de tres (3) a seis (6) meses.[12]

Por su parte, y también en cumplimiento con lo ordenado, el pasado 17 de mayo de 2021 el Procurador General compareció ante nos y presentó su *Informe* sobre el asunto de epígrafe. En apretada síntesis, el mencionado funcionario -- haciendo referencia al *Informe* de la ODIN -- concluyó que el licenciado Maldonado De Jesús "en el ejercicio del notariado no fue meramente negligente, sino que deliberadamente forjó la firma del otorgante del testimonio, a sabiendas que infringía las disposiciones legales que rigen el notariado, incluyendo la fe pública notarial, y los Cánones de Ética Profesional". (Énfasis suprimido).[13] Añadió, además, que el referido letrado

---

[12] Ello, en virtud de la sanción disciplinaria impuesta por este Tribunal al Lcdo. Julio M. Santiago Rodríguez (en adelante, "licenciado Santiago Rodríguez") en *In re Santiago Rodríguez*, 2021 TSPR 47, 206 DPR ___ (2021). En el precitado caso, el licenciado Santiago Rodríguez autorizó una Escritura de Poder en la cual consignó la comparecencia de un otorgante que falleció veinte (20) años antes de dicho acto. Como consecuencia, el licenciado Santiago Rodríguez fue suspendido inmediatamente de la práctica de la notaría por un periodo de tres (3) meses.

[13] Véase, Informe del Procurador General de Puerto Rico, pág. 30.

"no fue honesto y sincero con una agencia de gobierno al enviarle un documento que le constaba que era falso" y que "su proceder se debió al ánimo de lograr una transacción que podía lucrarlo sustancialmente". (Énfasis suprimido).[14] Así pues, el Procurador General concluyó que el letrado de epígrafe incurrió en violación de los Arts. 2, 12, 56 y 57 de la Ley Notarial de Puerto Rico, *infra*, las Reglas 65, 66 y 67 del Reglamento Notarial de Puerto Rico, *infra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*.

En consecuencia, el Procurador General recomendó a este Foro acoger las determinaciones de la ODIN sobre la conducta del mencionado letrado, considerar la sanción propuesta por ésta y ordenar cualquier sanción en el ejercicio de la abogacía que estimemos procedente.

Habiéndosele notificado este último *Informe*, el licenciado Maldonado De Jesús solicitó la paralización de los procedimientos del caso de autos hasta tanto concluyeran ciertas investigaciones conducidas por la Oficina del Panel sobre el Fiscal Especial Independiente y la Oficina de Ética Gubernamental relacionadas con su conducta profesional.[15]

---

[14] *Íd*.

[15] Tomamos conocimiento judicial de que el 4 de noviembre de 2021 se presentaron cinco (5) denuncias en contra del licenciado Maldonado De Jesús por tentativa de fraude, falsificación de documentos privados, falsificación ideológica, traspaso de documentos falsificados e intervención ilegal o indebida en operaciones o procesos gubernamentales. En esa misma fecha, se encontró causa para arresto contra el referido letrado.

Examinado el cuadro fáctico que antecede, procedemos a exponer los fundamentos en derecho en los cuales se sostiene nuestra determinación de suspender inmediata e indefinidamente al referido letrado del ejercicio de la abogacía y la notaría en nuestra jurisdicción.

II.

Como cuestión de umbral, es menester señalar que la práctica de la notaría en Puerto Rico está regida por las disposiciones de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA secs. 2001 *et seq.*, así como por el Código de Ética Profesional, 4 LPRA Ap. IX. Por tal razón, al ejercer sus funciones -- los notarios y las notarias -- deben observar ambos estatutos, pues de otro modo pudiesen estar expuestos o expuestas a severas sanciones disciplinarias. *In re Charbonier Laureano*, 204 DPR 351, 360 (2020); *In re González Maldonado*, 152 DPR 871, 895 (2002); *In re Vera Vélez*, 148 DPR 1, 7 (1999).

A.

En esa dirección, y como punto de partida en nuestro análisis, es preciso señalar que el Art. 2 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2002, define la figura del notario o la notaria como aquel profesional del derecho "que ejerce una función pública, **autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen**, sin perjuicio de lo dispuesto en las leyes especiales". (Énfasis

suplido). Así, esta disposición consagra el principio de la fe pública notarial, espina dorsal de nuestro sistema notarial. Véase, *In re Torres Rivera*, 204 DPR 1, 11 (2020); *In re Pagán Díaz*, 198 DPR 398, 404 (2017); *In re González González*, 119 DPR 496, 499 (1987). Sabido es que, los notarios y las notarias en nuestra jurisdicción están obligados a proteger con un celo cuidadoso tan noble principio. Véase, *In re Vázquez Margenat*, 204 DPR 968, 977 (2020); *In re Vázquez Pardo*, 185 DPR 1031, 1042 (2012); *In re Martínez Almodóvar*, 180 DPR 805, 815 (2011).

### B.

Así, pues, delimitadas las funciones del notario o la notaria en Puerto Rico, y ya más en lo pertinente al proceso disciplinario de epígrafe, debemos recordar que el Art. 12 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2023, impone a éstos y éstas el deber de remitir a la ODIN un índice sobre sus actividades notariales en el cual, a grandes rasgos, deben hacer constar las escrituras y los testimonios autorizados durante el mes precedente, así como los nombres de los comparecientes, la fecha, el objeto del instrumento o del testimonio, la cuantía de los instrumentos y el nombre de los testigos, de haber comparecido alguno. Este Índice de Actividad Notarial debe ser sometido no más tarde del décimo día calendario del mes siguiente al informado en el referido documento. *Íd.*

Sobre el alcance de tal responsabilidad, este Tribunal ha señalado que el incumplimiento -- por parte de los notarios y las notarias -- con dicho deber se entiende como un menoscabo a la fe pública notarial investida a éstos y éstas en nuestra jurisdicción. Véase, *In re Villalona Viera*, 2021 TSPR 27, 206 DPR ___ (2021); *In re Charbonier Laureano*, *supra*, pág. 362; *In re Cabrera Acosta*, 193 DPR 461, 466-467 (2015). Lo anterior, pues, los índices mensuales de actividad notarial "garantizan la certeza de los documentos en que intervienen los notarios [y notarias] y evitan el riesgo de manipulación y fraude". *In re Santiago Ortiz*, 191 DPR 950, 961 (2014). Véase, también, *In re Charbonier Laureano*, *supra*; *In re Cabrera Acosta*, *supra*, pág. 467.

Por ende, "un notario [o notaria] que asegure que una persona figuró como compareciente en una declaración jurada [entiéndase, un testimonio o declaración de autenticidad] en el Índice de Actividad Notarial presentado sin [ello] ser cierto, quebranta los Arts. 2, 12 y 56 de la Ley Notarial, las Reglas 65, 66, 67 del Reglamento Notarial y el Canon 35". *In re Vázquez Margenat*, *supra*, pág. 980. Véase, también, *In re Villalona Viera*, *supra*.

### C.

Por otro lado, el Art. 56 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2091, uno que también es necesario discutir en el escenario que nos encontramos, define el testimonio o declaración de autenticidad como el documento mediante el cual

un notario o una notaria, a requerimiento de parte interesada, da testimonio de fe de un documento no matriz; además de la fecha de éste. Entre los testimonios o declaraciones de autenticidad que regula la mencionada disposición legal se encuentra: la legitimación de firmas. *Íd*. Tal asunto también es regulado en la Regla 66 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, R. 66.

**Con relación al testimonio de legitimación de firma, la Regla 67 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, R. 67, expresa que por medio de este tipo de testimonio se "acredita el hecho de que, en determinada fecha, una firma ha sido puesta en presencia del notario y por quien evidentemente es quien dice ser".** (Énfasis suplido). Lo anterior es claro.

En virtud de ello, y por cuanto la declaración jurada es un testimonio de legitimación de firma, en el pasado este Tribunal ha sentenciado que los notarios y las notarias no pueden dar fe pública en un documento en el cual la persona que pretende otorgar el mismo no comparezca personalmente. Véase, *In re Villalona Viera*, *supra*; *In re Vázquez Margenat*, *supra*, pág. 978; *In re Llanis Menéndez I*, 175 DPR 22, 25-26 (2008). El notario o la notaria que autorice una declaración jurada en ausencia del firmante "quebranta la fe pública notarial y afecta la confianza depositada en el sistema de autenticidad documental". *In re Villalona Viera*, *supra*. Véase,

también, *In re Vázquez Margenat*, *supra*, págs. 978-979; *In re Arocho Cruz et al.*, 198 DPR 360, 366-367 (2017).

Incurrir en tal conducta constituye, como sabemos, la certificación de un hecho falso y, en consecuencia, implica el quebrantamiento de los Arts. 2, 12 y 56 de la Ley Notarial de Puerto Rico, *supra*, las Reglas 65, 66 y 67 del Reglamento Notarial de Puerto Rico, *supra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*. *In re Vázquez Margenat*, *supra*, pág. 980; *In re Arocho Cruz et al.*, *supra*, pág. 368. Véase, también, *In re Llanis Menéndez I*, *supra*, pág. 27. Esto, precisamente, fue lo que ocurrió en el proceso disciplinario que nos ocupa.

D.

De otra parte, no debemos olvidar que el Artículo 57 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2092, recoge ciertas formalidades que se deben observar en todo testimonio o declaración de autenticidad. Específicamente, esta disposición establece que las expresiones que se empleen en tales documentos deben ser breves y sencillas. *Íd*. Además, deben comprender la autenticidad del acto, con expresión del notario sobre el conocimiento personal de los firmantes o de los testigos con conocimiento, si alguno, o haciendo constar que se ha suplido el conocimiento personal mediante cualquier medio supletorio de identificación provisto en la Ley Notarial de Puerto Rico, *supra*. *Íd*.

E.

Establecido lo anterior, y por considerarlo en extremo pertinente para la correcta disposición del proceso disciplinario ante nuestra consideración, es importante mencionar aquí que el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 18, impone a los abogados y las abogadas el deber de rendir una labor idónea, competente y diligente. Dicho principio, a todas luces, condena la desidia, la despreocupación y la displicencia en los asuntos que les son encomendados al jurista o a la jurista. Véase, *In re Sánchez Reyes*, 204 DPR 548, 567 (2020); *In re García Cabrera*, 201 DPR 902, 925 (2019); *In re Maldonado Maldonado*, 197 DPR 802, 812 (2017).

El deber de competencia y diligencia contemplado en el mencionado canon "no significa que el abogado [o la abogada] puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente". De manera que, "[l]a misión del abogado [o la abogada] no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño". *Íd*.

Dicho ello, es menester recordar aquí que, en múltiples ocasiones, esta Curia ha reconocido que el Canon 18 del Código de Ética Profesional, *supra*, aplica a los abogados y las abogadas en el desempeño de su función notarial y, -- en conjunto con la Ley Notarial de Puerto Rico y el Reglamento Notarial de Puerto Rico --, les requiere corroborar que los

actos y negocios jurídicos que autoricen cumplan cabalmente con las normas legales aplicables. Véase, *In re García Cabrera*, *supra*; *In re Vargas Velázquez II*, 193 DPR 681, 690-691 (2015); *In re Toro González II*, 193 DPR 877, 890 (2015). Por consiguiente, un notario o una notaria que incurre en violación a las disposiciones de la Ley Notarial de Puerto Rico y su Reglamento infringe, a su vez, el canon de referencia. *In re Villalona Viera*, *supra*; *In re García Cabrera*, *supra*; *In re Ayala Oquendo*, 185 DPR 572, 580 (2012); *In re Aponte Berdecía*, 161 DPR 94, 106 (2004). Ello, por no ejercer el grado de cuidado y prudencia que requiere la profesión. *In re Villalona Viera*, *supra; In re Vázquez* Margenat, *supra*, pág. 979; In *re Arocho Cruz et al.*, *supra*.

F.

Sobre ese deber ético que debe tener todo miembro de la profesión legal, conviene también examinar lo dispuesto en el Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 35, el cual impone a los abogados y las abogadas el deber de conducirse con integridad, sinceridad y honradez ante los tribunales, para con sus representados y en las relaciones con sus compañeros y compañeras. Véase, también, *In re Charbonier Laureano*, *supra*, pág. 364; *In re Ramírez Salcedo*, 196 DPR 136, 149 (2016); *In re Reyes Coreano*, 190 DPR 739, 755 (2014); *In re Vázquez Pardo*, *supra*, pág. 1043; *In re Nieves Nieves*, 181 DPR 25, 41 (2011). A tenor, y para actuar conforme al mandato prescrito en dicho canon, los abogados y

las abogadas deben asegurarse de no proveer información falsa o incompatible con la verdad y de no ocultar información cierta que deba ser revelada. *In re Ortiz Sánchez*, 201 DPR 765, 781 (2019); *In re Ramírez Salcedo*, *supra*; *In re Astacio Caraballo*, 149 DPR 790, 798 (2000).

En esa dirección, en reiteradas ocasiones hemos expresado que la dación de fe -- en un instrumento público -- de un hecho falso por parte de un notario o una notaria constituye un quebrantamiento a la fe pública notarial que exige la Ley Notarial de Puerto Rico y su Reglamento; lo que, a su vez, socava la integridad de la profesión al incumplir con los deberes de sinceridad y honradez impuestos por el Canon 35 de Ética Profesional a todo letrado. *In re Vázquez Pardo*, *supra*, pág. 1042; *In re Martínez Almodóvar*, *supra*, pág. 816; *In re Rivera Aponte*, 169 DPR 738, 742 (2006). De manera que, el mencionado canon se infringe con el solo hecho de faltar a la verdad, independientemente de los motivos de su falsedad. *In re Charbonier Laureano*, *supra*; *In re Pérez Guerrero*, 201 DPR 345, 357 (2018); *In re Vázquez Pardo*, *supra*, pág. 1043.

Más en específico, hemos indicado que se transgrede la precitada disposición deontológica si el notario o la notaria da fe de que la declaración jurada fue suscrita y firmada por el o la declarante en su presencia y ello es un hecho falso. Véase, *In re Vázquez Margenat*, *supra*, pág. 980; *In re Arocho Cruz et al.*, *supra*; *In re Llanis Menéndez I*, *supra*; *In re Rivera Aponte*, *supra*, pág. 744. **Recuérdese que "es norma clara**

**de este Tribunal que la certificación de un hecho falso es**
**una de las faltas más graves que puede cometer un notario [o**
**notaria]".** (Énfasis suplido). *In re Rivera Aponte*, *supra*.
Véase, también, *In re Vargas Velázquez II*, *supra*, pág. 690;
*In re Vargas Hernández*, 135 DPR 603, 607 (1994). De ahí que,
en esos escenarios, no se consideran defensas el no haber
procedido de mala fe ni deliberadamente, no haber actuado con
la intención de engañar o defraudar, así como no haber causado
daño o perjuicio a un tercero. Véase, *In re Vázquez Margenat*,
*supra*, pág. 979; *In re Pagán Díaz*, *supra*, pág. 407; *In re*
*Ramírez Salcedo*, *supra*; *In re Reyes Coreano*, *supra*, pág. 756;
*In re Vázquez Pardo*, *supra*, pág. 1044.

G.

Por último, es necesario destacar que el Canon 38 del
Código de Ética Profesional, 4 LPRA Ap. IX, C. 38, recoge los
valores principales con los cuales debe cumplir un abogado o
una abogada en el desempeño de su gestión profesional y en su
vida privada, a saber, el honor y la dignidad. Véase, *In re*
*Raffucci Caro*, 2021 TSPR 31, 206 DPR ___ (2021); *In re*
*Villalona Viera*, *supra*; *In re Reyes Coreano*, *supra*, págs. 756-
757; *In re Gordon Menéndez*, 183 DPR 628, 642 (2011). Entre
otras cosas, el mencionado Canon 38, *supra*, establece que
"[e]l abogado [o la abogada] deberá esforzarse, al máximo de
su capacidad, en la exaltación del honor y dignidad de su
profesión, aunque el así hacerlo conlleve sacrificios

personales y debe evitar hasta la apariencia de conducta profesional impropia".

Cónsono con lo anterior, esta Curia, en múltiples ocasiones, ha reiterado que "por ser los abogados [y las abogadas] el espejo donde se refleja la imagen de la profesión, éstos [y éstas] deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejerce[n]". *In re Ramos Sáenz*, 205 DPR 1089, 1102 (2020); *In re Reyes Coreano, supra*, pág. 757. Véase, también, *In re Colón Ortiz*, 204 DPR 452, 460 (2020); *In re Torres Rodríguez*, 201 DPR 1057, 1069-1070 (2019). "[U]n abogado o una abogada que no se conduce digna y honorablemente viola el Canon 38" del Código de Ética Profesional. *In re Aponte Duchesne*, 191 DPR 247, 258 (2014). Véase, también, *In re García Vega*, 189 DPR 741, 757 (2013).

Es, pues, a la luz de la normativa deontológica antes expuesta que procedemos a disponer del proceso disciplinario que nos ocupa.

III.

Como mencionamos anteriormente, la presente queja disciplinaria fue presentada ante nos por el Representante Márquez Lebrón. A ésta, se le anejaron determinados informes legislativos -- entre ellos, uno que produjo la Comisión de Salud de la Cámara de Representantes, presidida en ese entonces por el Representante Morales Rodríguez -- de los cuales se desprende la conducta desplegada por el licenciado

Maldonado De Jesús durante el proceso de compra, distribución, manejo y administración de las pruebas para detectar el COVID-19. Luego de recibir la contestación a la queja de epígrafe por parte del mencionado letrado, este asunto fue referido a la ODIN y a la Oficina del Procurador General para las investigaciones e informes de rigor. En suma, ambos entes gubernamentales recomendaron la suspensión inmediata e indefinida del licenciado Maldonado de Jesús del ejercicio de la notaría, así como las correspondientes acciones en torno al ejercicio de la abogacía. Coincidimos con dicha apreciación.

Y es que nos encontramos ante un caso en que las actuaciones del referido letrado fueron de magnitud tal que, sin lugar a duda, ameritan la suspensión inmediata e indefinida de éste del ejercicio de la abogacía y la notaría. **Ello, pues, somos del criterio de que sus actos constituyeron la violación más crasa y patente a la fe pública notarial.**

En esa línea, -- y según ha quedado claramente demostrado a lo largo de este escrito --, no albergamos duda alguna de que el licenciado Maldonado De Jesús quebrantó los Arts. 2, 12, 56 y 57 de la Ley Notarial de Puerto Rico, *supra*, y las Reglas 65, 66 y 67 del Reglamento Notarial de Puerto Rico, *supra*. Ello, toda vez que éste: 1) menoscabó la fe pública notarial al escribir la firma del señor Rodríguez López en determinado documento notarial y autorizar cierta declaración jurada en ausencia de este último; lo que permitiría a la

compañía Apex participar en el proceso de compra de las pruebas para detectar el virus del COVID-19; y 2) aseguró en su Índice Mensual de Actividad Notarial correspondiente al mes de marzo del año 2020 que el señor Rodríguez López compareció en una declaración jurada sin que ello fuera cierto.

Tampoco nos cabe duda que el mencionado letrado violentó lo dispuesto en los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*, ya que: 1) no ejerció el grado de cuidado ni prudencia necesario en el desempeño de su función notarial, al autorizar el testimonio de legitimación de firma y reportarlo en el Índice Mensual de Actividad Notarial; 2) faltó al deber de sinceridad y honradez al escribir la firma del señor Rodríguez López en determinado documento notarial y dar fe de que éste lo firmó en su presencia sin ser cierto; y 3) su conducta no exaltó el honor ni la dignidad de la profesión legal, pues en momentos en que nuestro país enfrentaba una gran crisis de salud -- producto de la pandemia del COVID-19 --, "su proceder se debió al ánimo de lograr una transacción que [pudiese] lucrarlo sustancialmente". (Énfasis suprimido).[16]

Si bien el licenciado Maldonado De Jesús aceptó que cometió la falta y expresó arrepentimiento por su conducta, lo cierto es que no podemos ignorar el hecho de que ello configuró una violación de carácter grave que atentó contra

---

[16] Véase, Informe del Procurador General de Puerto Rico, pág. 30.

la fe pública que reviste al notariado en nuestra jurisdicción. Contrario a lo que éste señala, la emergencia de la pandemia del COVID-19 no podía ser utilizada como subterfugio para incumplir con la Ley Notarial de Puerto Rico, su Reglamento ni el Código de Ética Profesional.

**Recordemos que la notaría es una faena de tiempo y paciencia. Por lo que, circunstancias excepcionales -- como la pandemia del COVID-19 -- no pueden ni deben ser consideradas como justificaciones que eximan del cumplimiento con las normas legales, notariales y éticas vigentes.**

IV.

Es pues, por todo lo anterior, que coincidimos con las conclusiones abordadas por la ODIN y la Oficina del Procurador General en sus respectivos informes, en cuanto a que el licenciado Maldonado De Jesús infringió los Arts. 2, 12, 56 y 57 de la Ley Notarial de Puerto Rico, *supra*, las Reglas 65, 66 y 67 del Reglamento Notarial de Puerto Rico, *supra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*.

Siendo ello así, y en virtud de nuestro poder inherente de reglamentar la profesión de la abogacía, suspendemos inmediata e indefinidamente al licenciado Maldonado De Jesús del ejercicio de la abogacía y de la notaría.

En consecuencia, se le ordena al señor Maldonado De Jesús notificar a todos sus clientes de su inhabilidad para continuar representándolos, devolver cualesquiera honorarios recibidos por trabajos no realizados e informar de su

suspensión a los foros judiciales y administrativos en los que tenga algún asunto pendiente. Asimismo, se le impone la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro de un término de treinta (30) días contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. Se le apercibe que no cumplir con lo anterior podría conllevar que no se le reinstale a la práctica de la profesión legal, de solicitarlo en un futuro.

De otra parte, en virtud de la suspensión inmediata e indefinida del ejercicio de la notaría, la fianza notarial del señor Maldonado De Jesús queda automáticamente cancelada. Ésta se considerará buena y válida por tres (3) años después de su terminación en cuanto a los actos realizados durante el periodo en que estuvo vigente. Finalmente, se le ordena al Alguacil de este Tribunal incautar inmediatamente la obra y el sello notarial del señor Maldonado De Jesús y entregarlos al Director de la ODIN para la correspondiente investigación e informe.

Notifíquese por correo electrónico y por la vía telefónica esta Opinión *Per Curiam* y Sentencia al señor Maldonado De Jesús.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Juan M. Maldonado De Jesús
        (TS-15,053)

AB-2020-82

SENTENCIA

En San Juan, Puerto Rico, a 19 de enero de 2022.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se suspende al Lcdo. Juan Maldonado De Jesús inmediata e indefinidamente del ejercicio de la abogacía y la notaría.

Se le impone al señor Maldonado De Jesús el deber de notificar a todos sus clientes de su inhabilidad para continuar representándolos, devolver cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los foros judiciales y administrativos. Además, tiene la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

Se ordena, además, al Alguacil de este Tribunal incautar su obra notarial, incluyendo su sello notarial, y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal. La fianza notarial del

señor Maldonado De Jesús queda automáticamente cancelada; esta se considerará buena y válida por tres (3) años después de su terminación en cuanto a los actos realizados por el señor Maldonado De Jesús durante el periodo en que la misma estuvo vigente.

Notifíquese inmediatamente.

Lo acordó el Tribunal y certifica la Subsecretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco está conforme en parte y disiente en parte y hace constar la siguiente expresión:

> "Como principio del Derecho Notarial, todo notario y notaria tiene el deber ministerial de cumplir con la Ley Notarial de Puerto Rico, 4 LPRA sec. 2001 *et seq.*, el Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV y con el Código de Ética Profesional, 4 LPRA Ap. IX. Un notario lacera la fe pública notarial al legitimar la firma de una persona que no compareció ante él. Sin duda, esa actuación infringe también los deberes plasmados en el Código de Ética Profesional, *supra.* Luego de considerar varios factores, he establecido que esa conducta resulta en la suspensión indefinida del ejercicio de la notaría y en la Suspensión por el término de tres (3) meses del ejercicio de la abogacía. Véase *In re Villalona Viera,* 2021 TSPR 27, 206 DPR (2021); *In re Flores Martínez,* 199 DPR 691 (2018). Ante ello, coincido con la Mayoría de este Tribunal en suspender de forma indefinida al Lcdo. Juan M. Maldonado De Jesús del ejercicio de la notaría. Sin embargo, difiero en suspenderlo indefinidamente del ejercicio de la abogacía. Dado a la etapa en que se encontraba el procedimiento disciplinario y en ánimo de mantener consistencia en la imposición de sanciones disciplinarias, suspendería al licenciado Maldonado De Jesús por un término de tres (3) meses del ejercicio de la abogacía y de forma indefinida del ejercicio de la notaría".

Bettina Zeno González
Subsecretaria del Tribunal Supremo